## A02A2417. SIMS v. THE STATE.
### (574 SE2d 622)

BLACKBURN, Chief Judge.

Burton H. Sims appeals his conviction by a jury of trafficking in amphetamine and possession of a firearm during the commission of a felony, arguing that the trial court erred in denying his motion for new trial because, among other things, (1) there were fatal variances between the allegations of the indictment and the proof at trial, and (2) the trial court charged Code sections in their entirety when portions of the Code sections were inapplicable to his case. For the reasons set forth below, we affirm.

1. Sims contends that the trial court erred in submitting the charge of trafficking in amphetamine to the jury because there was a fatal variance between the indictment and the evidence offered by the State. We disagree.

The indictment charged Sims with trafficking amphetamine by knowingly possessing more than 200 grams of amphetamine. At trial, Tina Wu, a forensic chemist with the State Crime Lab, testified that she had received State's Exhibit 1 and had performed various tests on the substance. Based on those tests, she determined that the exhibit was positive for amphetamine and had a net weight of 215.7 grams. She also determined that there was "a little bit of methamphetamine in the sample, so it was a mixture of amphetamine and methamphetamine." Sims argues that there was a fatal variance in the indictment because the indictment charged Sims with possession of amphetamine, and the evidence at trial was that the substance involved was a mixture of amphetamine and methamphetamine.

A similar argument was made by the appellants in *Bellamy v. State*.[1] This Court, finding the argument "absurd," said:

As the Supreme Court noted in *Gonzalez v. Abbott*,[2] "No one . . . would take seriously the argument . . . that charging

---

[1] *Bellamy v. State*, 243 Ga. App. 575 (530 SE2d 243) (2000).
[2] *Gonzalez v. Abbott*, 262 Ga. 671, 673 (1), n. 4 (425 SE2d 272) (1993).

the defendant with trafficking in a 'substance containing cocaine' created a fatal variance with proof at trial that the defendant possessed a 'mixture containing cocaine.'" But that is essentially the argument the defendants make by suggesting that, by being charged with trafficking in a "mixture" containing methamphetamine, there is a fatal variance if, in fact, the evidence shows that they actually were trafficking in pure methamphetamine. The statute under which the defendants were charged, OCGA § 16-13-31 (e), treats pure methamphetamine and a mixture containing methamphetamine equally. Accordingly, any variance in proof at trial regarding whether the substance was a mixture containing methamphetamine or pure methamphetamine is not fatal.

(Footnote omitted.) *Bellamy v. State*, supra at 579-580 (2).

Following the reasoning of the *Bellamy* Court, and noting that OCGA § 16-13-31 (e) treats amphetamine and a mixture containing amphetamine equally, it is clear that any variance in this case between the allegations of the indictment and the proof at trial is not fatal. Moreover,

[t]he general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense. Clearly, the variance complained of here, would not subject the accused to either of these dangers.

(Citations and punctuation omitted.) *DePalma v. State*.[3]

2. Sims next argues that there was a fatal variance between the allegations of the indictment and the proof at trial because he was charged, in Count 2, with possession of a firearm during the commission of a crime by trafficking in methamphetamine, while he was charged, in Count 1, with trafficking in amphetamine rather than methamphetamine. Again, we find no error.

OCGA § 16-11-106 (b) (5) provides, in pertinent part, that "[a]ny person who shall have on . . . his or her person a firearm . . . during the commission of . . . [a]ny crime involving the trafficking of

---

[3] *DePalma v. State*, 225 Ga. 465, 469-470 (169 SE2d 801) (1969).

cocaine, marijuana, or illegal drugs as provided in Code Section 16-13-31, and which crime is a felony, commits" the crime of possession of a firearm during the commission of a crime. "OCGA § 16-11-106 does not require undue specificity, but only that the crime be a felony falling within one of the categories set forth therein." *Gatlin v. State.*[4] Since trafficking in either amphetamine or methamphetamine falls within the categories set forth in OCGA § 16-13-31, there is no fatal variance. "We further note that the alleged variance was not fatal because there is no reasonable probability that [Sims] misunderstood the charges against him, was surprised or harmed by the wording of the indictment, or is not protected against a later prosecution for the same offense." *Wright v. State.*[5]

3. In several enumerations of error, Sims complains that the trial court erred in giving various charges to the jury. We disagree.

Review of the record indicates that Sims's counsel neither objected nor reserved objections to the charges of the court when expressly asked by the trial judge if he had any objections.

> The general rule in this state is that defendants in criminal cases are not required to except to the jury charge to preserve error for appeal. If, however, the trial court asks if there are objections to the charge, defense counsel must either state his objections or reserve the right to object on motion for new trial or on appeal. Where objections are requested, the failure to either object or to reserve the right to later object amounts to a procedural default barring appellate review of the charge.

*Young v. State.*[6] By failing to either object or reserve objection in the face of direct inquiry from the court, Sims waived any objections to the charges about which he complains.

Under OCGA § 5-5-24 (c), we must "consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not." However,

> [i]n order to satisfy this standard, appellant must show that the allegedly erroneous charge was blatantly apparent and prejudicial to the extent that it raises a question whether he has been deprived, to some extent, of a fair trial. Nothing is presented for consideration on appeal unless a gross miscar-

[4] *Gatlin v. State*, 199 Ga. App. 500, 501 (2) (405 SE2d 118) (1991).
[5] *Wright v. State*, 232 Ga. App. 104, 106 (2) (501 SE2d 543) (1998).
[6] *Young v. State*, 238 Ga. App. 555, 557 (2) (519 SE2d 481) (1999).

riage of justice attributable to the jury charge is about to result.

(Citations and punctuation omitted.) *Miller v. State*.[7] Our review of the specific charges to which Sims objects fails to reveal any error which was harmful as a matter of law.

Sims complains, for instance, that the trial court erred in charging the entirety of Code sections when portions of the sections were inapplicable in his case. Thus, he contends that, since he is specifically and only charged in the indictment with trafficking in amphetamine by "knowingly possessing" amphetamine in a certain quantity, the trial court erred when it instructed the jury that a person is guilty of trafficking when he "knowingly sells, manufactures, delivers, or brings into this state or has possession of 28 grams or more of" contraband. He also maintains that, since the indictment alleged that he had a specific weapon, i.e., a Colt .380 automatic pistol, the trial court erred both by charging that the definition of "firearm" included stun guns and Tasers, and also by charging that a person committed the crime of possession of a firearm during the commission of a crime when they trafficked in drugs while in possession of a firearm or a knife having a blade of three or more inches.

With respect to Sims's argument that he was only charged with knowingly possessing amphetamine while the trial court's instructions also referred to selling, manufacturing, delivering, and bringing amphetamine into the state, we have found that "charging a criminal offense, which could be committed in more than one way, in its entirety was error where the indictment limited the offense to a particular mode." *Searcy v. State*.[8] But, contrary to Sims's argument, OCGA § 16-13-31 (e) (2) sets forth only one way in which the crime of which Sims was convicted can be committed.

As our Supreme Court has explained, "the very definition of the crime of trafficking is based on the amount of the controlled substance involved." *Bassett v. Lemacks*.[9] The emphasis in OCGA § 16-13-31 (e), which defines trafficking in amphetamine, is not on whether the accused has sold, manufactured, delivered, or possessed amphetamine, but rather on the quantity of amphetamine involved. Different sentences attach to the respective different amounts of amphetamine involved. But, while the punishments can differ, an accused can commit the crime of trafficking in only one way, by being involved with more than 28 grams of amphetamine.

That the emphasis is on the quantity of drugs involved rather

---

[7] *Miller v. State*, 240 Ga. App. 18, 20 (3) (522 SE2d 519) (1999).
[8] *Searcy v. State*, 168 Ga. App. 233 (1) (308 SE2d 621) (1983).
[9] *Bassett v. Lemacks*, 258 Ga. 367, 370-371 (2) (370 SE2d 146) (1988).

than on how a defendant is involved with the drugs is made clear by the statutory subsection setting forth sentences for involvement with various amounts of amphetamine. OCGA § 16-13-31 (e) (1) sets forth the sentence to be imposed on a defendant who has been involved with 28 grams or more, but less than 200 grams, of amphetamine. OCGA § 16-13-31 (e) (2), the statutory paragraph under which Sims was convicted, sets forth a harsher penalty for trafficking in 200 grams or more, but less than 400 grams, of amphetamine. And, OCGA § 16-13-31 (e) (3) lays out a still harsher sentence for trafficking in 400 or more grams of amphetamine. The trial court's charge referred only to paragraph (e) (2), setting forth a particular punishment for committing the crime of trafficking; it did not refer to paragraph (e) (1) or (e) (3), which concern other punishments for trafficking.

With respect to Sims's argument concerning references to definitions that did not fit the firearm described in the indictment, "[t]he well established rule is that a charge on a code section in its entirety is not error where a part thereof is applicable and it does not appear that the inapplicable part misled the jury or erroneously affected the verdict." *Searcy*, supra. While any references to stun guns, Tasers, or knives were extraneous, we find it highly unlikely that the jury was misled by these references in the charges, especially since the court sent the indictment out with the jury. *Chandler v. State.*[10]

4. Sims's remaining enumerations of error are meritless.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 21, 2002.

*Scott Walters, Jr.,* for appellant.
*William T. McBroom III, District Attorney, Thomas J. Ison, Assistant District Attorney,* for appellee.

---

[10] *Chandler v. State,* 213 Ga. App. 46, 47 (2) (443 SE2d 679) (1994).