S05A1413. ROCHEFORT v. THE STATE.
(620 SE2d 803)

CARLEY, Justice.

Appellant Richard Rochefort was tried before the trial court on an accusation charging him with possession of more than 300 tablets of ephedrine, possession of methamphetamine and shoplifting. At the close of the State's evidence, he moved for a directed verdict of acquittal, in which motion he included a challenge to the constitutionality of OCGA § 16-13-30.3 (b) (1). The trial court denied the motion, and found Appellant guilty on all counts. He appeals from the judgments of conviction and sentences entered by the trial court on its findings of his guilt.

1. OCGA § 16-13-30.3 (b) (1) provides, in relevant part, that it is "unlawful for any person . . . to knowingly possess any product that contains ephedrine, pseudoephedrine, or phenylpropanolamine in an amount which exceeds 300 pills, tablets, gelcaps, capsules, or other

---

[8] *WALB-TV*, 269 Ga. at 566.

individual units . . . ." Appellant contends that this provision is unconstitutionally arbitrary and vague.

"[C]ombating the illicit drug problem is a legitimate purpose. . . ." *Lavelle v. State*, 250 Ga. 224 (1) (297 SE2d 234) (1982). To that end, "the legislature can rationally employ different means to respond to the problems created by different drugs." *Hardin v. State*, 277 Ga. 242, 243 (2) (587 SE2d 634) (2003). Insofar as the substances listed in OCGA § 16-13-30.3 (b) (1) are concerned, the General Assembly has determined that possession of 300 and fewer individual units serves a legitimate health concern, whereas the possession of a greater number does not. See OCGA § 16-13-30.3 (a) (2) (which defines "personal use" as possession "for a legitimate medical use" in a quantity "at or below" 300 tablets).

> " '[I]f the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." (Cits.)' [Cits.] Rather, '(t)his inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinction is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary. (Cits.) Such action by a legislature is presumed to be valid.' [Cits.]" [Cits.]

*Hanson v. State*, 275 Ga. 470, 472 (3) (569 SE2d 513) (2002).

> It is unnecessary for this Court to determine . . . whether the legislative classification scheme is the best one available. [Cit.] It is enough to recognize that the legislature can rationally employ different means to respond to the problems created by different drugs.

*Hardin v. State*, supra. Accordingly, we find no basis for second guessing the General Assembly's determination that the line between legal and illegal possession of ephedrine, pseudoephedrine and phenylpropanolamine should be drawn at 300 individual units.

Appellant further contends that the statute is unconstitutionally vague because it prohibits possession of three different substances or a mixture thereof. As the provision makes clear, however, "ephedrine," "pseudoephedrine," and "phenylpropanolamine" are deemed to be so similar to one another that each is considered a functional equivalent of the others, as well as "any of their salts, isomers, or salts of isomers, alone or in a mixture." OCGA § 16-13-30.3 (a) (1). This

connection between the substances is further established by the State's expert witness in this case, who testified that

> [e]phedrine and pseudoephedrine, they are nearly indistinguishable. [They have the e]xact same chemical formulas . . . . The only difference is the spacial orientations of the bonds. They have the same effect on your body, although pseudoephedrine is slightly stronger.

She also noted that "ephedrine" and "pseudoephedrine" were often used interchangeably, and that "they are exactly the same. They have the same chemical makeup. Exactly the same." Therefore, OCGA § 16-13-30.3 (b) (1) is not unconstitutionally vague because it addresses the possession of three controlled substances or a mixture thereof, and that statute "does not deny the defendant any of his rights guaranteed by the United States [or Georgia] Constitution[s]." *Akins v. State*, 224 Ga. 650, 653 (164 SE2d 125) (1968) (upholding, as against a vagueness challenge, the constitutionality of a statute prohibiting possession of "any vinous, malt, or spirituous liquors or beverages" on which taxes or license fees were not paid).

2. At a truck stop, Appellant was observed concealing boxes of cold medication in his jacket. The authorities were called, and he was arrested for shoplifting. Appellant initially denied that he drove to the scene, but eventually acknowledged that an unoccupied tractor trailer on the premises was his. The vehicle was idling and parked illegally, and the manager of the truck stop asked the arresting officer to move it. When the policeman entered the cab, he saw in plain sight several hundred boxes of cold medication, what appeared to be a crack cocaine or methamphetamine pipe, and plastic bags containing 2,329 tablets. Testing of two of the tablets showed that they contained pseudoephedrine, and testing of the pipe was positive for methamphetamine. Appellant admitted that he smoked methamphetamine in the pipe and had a "drug problem." He also acknowledged that he intended to sell the tablets to whomever "could buy them to produce . . . methamphetamine."

Appellant contends that, under the equal access rule, this evidence is not sufficient to authorize his convictions for possessing ephedrine and methamphetamine. However, that rule is inapplicable where, as here, recent possession is not the sole evidence of guilt. See *Kantorik v. State*, 257 Ga. App. 828, 829 (2) (572 SE2d 690) (2002). Appellant's inculpatory admissions were additional evidence authorizing a finding that he possessed the substances.

Appellant asserts that the State failed to prove that he violated OCGA § 16-13-30.3 (b) (1), because only two of the tablets were tested. Although the expert actually conducted testing on only two of the

2,329 tablets that were seized, she testified that she visually examined the remainder and determined that they all had the same logo and appearance. Thus, she offered her expert opinion, "[w]ithin a reasonable scientific certainty . . . that all of those tablets contain[ed] pseudoephedrine." This evidence supports the finding that Appellant possessed more than 300 tablets containing pseudoephedrine. See *Means v. State*, 188 Ga. App. 210, 211 (2) (372 SE2d 484) (1988) (discussing probity of random testing).

Appellant urges that there is a fatal variance because the accusation charged him with possession of more than 300 tablets of ephedrine, but the proof showed that the tablets contained pseudoephedrine. As previously noted, however, for purposes of OCGA § 16-13-30.3, "ephedrine" and "pseudoephedrine" are synonymous, so that the one includes the other. OCGA § 16-13-30.3 (a) (1). The explanation for why the substances are deemed to be functional equivalents is established by the testimony of the State's expert, who noted that "ephedrine" and "pseudoephedrine" can be used interchangeably, have the same chemical formulas and induce the same physical effects. Therefore, there was no fatal variance between the accusation charging possession of ephedrine and the proof at trial showing possession of pseudoephedrine. See *Sims v State*, 258 Ga. App. 536, 537 (1) (574 SE2d 622) (2002) (no fatal variance where statute treats two substances equally).

When construed most strongly in support of the trial court's findings, the evidence is sufficient to authorize a rational trier of fact to find proof of Appellant's guilt of all three offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 11, 2005.

*John R. Greco*, for appellant.
*Patrick H. Head, District Attorney, Dana J. Norman, C. Lance Cross, Assistant District Attorneys*, for appellee.