## A05A2020. SMITH v. THE STATE.
### (628 SE2d 722)

RUFFIN, Chief Judge.

Roger Hymie Smith was found guilty of selling cocaine, possessing cocaine with intent to distribute, possessing cocaine with intent to distribute within 1,000 feet of a school, and possessing cocaine with intent to distribute within 1,000 feet of a public park. He was found not guilty of a second count of possessing cocaine with intent to distribute. He appeals, challenging the sufficiency of the evidence, asserting a claim of double jeopardy, and alleging various errors by the trial court in admitting evidence and charging the jury. He also objects to his recidivist sentencing and contends that he received ineffective assistance of counsel. For reasons that follow, we affirm in part and reverse in part.

1. Preliminarily, we address the State's motion to dismiss the appeal because of Smith's untimely filing of his appellate brief. Smith's brief was initially due on July 13, 2005. On July 12, 2005, he filed a motion for an extension of time in which to file his brief, which was granted through July 25, 2005. On July 21, 2005, Smith filed another motion for an extension, which was denied on July 26, 2005. Nonetheless, Smith did not file his brief until August 8, 2005.

We are authorized to dismiss Smith's appeal and hold counsel in contempt for failure to timely file a brief.[1] Because the fault appears to lie with Smith's counsel rather than with Smith, we elect not to dismiss the appeal in this instance. However, "we expect all counsel practicing in this Court to know and to follow its rules."[2] We thus require by separate order that Smith's counsel "show cause why he should not be cited for contempt for failure to comply with this Court's rules."[3]

2. In three enumerations of error, Smith challenges the sufficiency of the evidence. Specifically, he contends that he was entitled to directed verdicts on Count 3, possessing cocaine with intent to distribute; Count 4, possessing cocaine with intent to distribute within 1,000 feet of a school; and Count 5, possessing cocaine with intent to distribute within 1,000 feet of a public park. On appeal from a criminal conviction, Smith "no longer enjoys the presumption of innocence, and we view the evidence in a light most favorable to the verdict to determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt."[4]

---

[1] See Ga. Court of Appeals Rule 23 (a).

[2] *Gentile v. Bower*, 222 Ga. App. 736, 738 (477 SE2d 130) (1996).

[3] Id.

[4] (Punctuation omitted.) *Smith v. State*, 276 Ga. App. 677, 677-678 (1) (624 SE2d 272) (2005).

Viewed in this manner, the evidence shows that in May 2002 a confidential informant, Gary Deloach, told Detective Jeff Hein that he could introduce Hein to someone who could purchase cocaine from Smith. On May 15, 2002, Hein — who was undercover — and Deloach asked Glenda Curtis to purchase cocaine for them. Glenda agreed, but then changed her mind after speaking with her husband, Mike Curtis. Mike's reason for not allowing Glenda to purchase cocaine for them was that he did not know Hein.

Hein then obtained an anticipatory search warrant for Smith's residence. The warrant was to be served if five "triggers" occurred: that Deloach would be searched to ensure that he had no contraband; that he would be observed making contact with one or both of the Curtises; that he would ask one of the Curtises to purchase cocaine using marked money; that the person or persons going to Smith's residence would be followed; and that the person or persons would be searched upon leaving Smith's residence and, if drugs were found, the search warrant would be served.

On May 22, 2002, Hein and Deloach made another attempt to have the Curtises purchase cocaine. Hein testified that he searched Deloach and then gave him two marked $20 bills. He took Deloach to the Curtises' apartment. Deloach gave Glenda Curtis the marked money. While under surveillance by law enforcement officers, she went to Smith's residence, where she bought $40 of crack cocaine from Smith. After Glenda left Smith's residence, she was stopped by a member of the drug task force. She had cocaine in her vehicle, and she told Hein that she had purchased it from Smith.

Law enforcement officers executed the search warrant at Smith's residence immediately thereafter. As Hein entered the residence, he saw Smith exiting the bathroom attached to the master bedroom and heard the toilet filling up with water after being flushed. Hein found a rock of crack cocaine inside the toilet. The two marked $20 bills were found, along with Smith's food stamp card, in a Bible in the master bedroom.

Officers also found a pill bottle containing three pieces of crack cocaine in a nearby yard. Witnesses had seen Smith's son, Wesley, run from the area behind the Smith residence as officers approached and throw something into the yard.

Referring to a certified tax map of Long County, which was admitted into evidence, Hein identified the location of Smith's residence and confirmed that it is within 1,000 feet of both Annie Phillips Park and the Faith Baptist Day School. Another officer familiar with the area also testified that Smith's residence was within 1,000 feet of the park and the school.

Based on this evidence, Smith was found guilty of: Count 1, selling cocaine (for the cocaine recovered from Glenda Curtis); Count

3, possessing cocaine with intent to distribute (for the cocaine in the pill bottle); Count 4, possessing cocaine with intent to distribute within 1,000 feet of a school; and Count 5, possessing cocaine with intent to distribute within 1,000 feet of a public park. He was found not guilty of Count 2, possessing cocaine with intent to distribute (for the cocaine found in the toilet).

(a) Smith asserts that the trial court should have granted him a directed verdict on Count 3, which relates to the cocaine found in a pill bottle in a yard near his residence, because the State presented no evidence that he had any connection with the bottle. The State argues that the fact that Smith's minor son ran from the vicinity of Smith's residence as the search warrant was being executed and threw something into a neighboring yard, coupled with similar transaction evidence that Smith had attempted to discard a pill bottle of crack cocaine during a previous arrest, provided enough circumstantial evidence to overcome a motion for a directed verdict.[5]

We will uphold the trial court's denial of a motion for directed verdict if there is sufficient evidence that a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.[6] While we agree that the eyewitness testimony provided sufficient evidence to connect Smith's son, Wesley, with the pill bottle containing cocaine, the relevant inquiry is whether there was sufficient evidence that the pill bottle was ever possessed by Smith himself. In the absence of any evidence that Smith had actual possession of the cocaine in the pill bottle, the State must rely on circumstantial evidence to show constructive possession.[7] Mere proximity to contraband is not enough to prove constructive possession.[8] The State must demonstrate some meaningful connection between the defendant and the contraband; this connection may be made by evidence "that the contraband was discovered on premises occupied and controlled by the defendant with no right of equal access and control in others."[9]

At most, the evidence here shows that the cocaine in the pill bottle was in Wesley's possession in the area behind the Smith residence. And while Smith occupied the residence, others had equal access to and control of both the residence and the area surrounding

---

[5] The argument and citation of authority portion of the State's brief is remarkably devoid of citations to the record, which greatly impeded this Court's review.

[6] See *Jackson v. State*, 258 Ga. App. 806 (1) (575 SE2d 713) (2002).

[7] See *Hodges v. State*, 277 Ga. App. 174 (626 SE2d 133) (2006); *Brookshire v. State*, 230 Ga. App. 418, 419 (496 SE2d 757) (1998).

[8] See *In re E. A. D.*, 271 Ga. App. 531, 532 (610 SE2d 153) (2005).

[9] Id. See also *Turner v. State*, 276 Ga. App. 381, 382-383 (623 SE2d 216) (2005) (presumption that contraband found in vehicle was possessed by vehicle owner overcome by evidence that others had equal access to vehicle).

it. Two of Smith's teenage children lived with him, and an adult daughter lived next door. At the time the search warrant was executed, another of Smith's daughters and her boyfriend were visiting and were outside Smith's residence.

When a conviction depends upon circumstantial evidence, that evidence must be consistent with the hypothesis of guilt and must exclude every other reasonable hypothesis.[10] Under these circumstances, the evidence does not exclude the possibility that the cocaine belonged to someone other than Smith, and the trial court should have granted Smith a directed verdict on Count 3.[11]

(b) Smith contends that the trial court should have granted him a directed verdict on Counts 4 and 5 because there is a fatal variance between the indictment and what was proven at trial, and, alternatively, the State did not conclusively establish the distance from his home to either the school or park. It is unlawful to "manufacture, distribute, dispense, or possess with intent to distribute" cocaine within 1,000 feet of a school or a public park.[12] Smith argues that he was specifically charged with possession with intent to distribute in violation of these Code sections, and therefore the State must prove possession with intent to distribute rather than sale of cocaine in order to obtain a conviction.

Where an indictment charges that a crime was committed by one method, the State is required to prove commission of the crime by that particular method.[13] The indictment charges that Smith "did . . . unlawfully possess with intent to distribute [c]ocaine" within 1,000 feet of a school and a public park. Because Smith was found not guilty on Count 2 and we have held that he is entitled to a directed verdict on Count 3, we must determine whether evidence related to the sale of cocaine to Glenda Curtis provides the requisite proof for these charges.[14]

We "do not follow an overly technical application of the fatal variance rule, but focus instead on materiality"; that is, whether the variance between the indictment and proof at trial affected the defendant's substantial rights.[15] Under Georgia law, the indictment must

> definitely inform the accused as to the charges against him
> so as to enable him to present his defense and not to be taken

---

[10] See *Hodges*, supra.

[11] See id.; *Mitchell v. State*, 268 Ga. 592, 593 (492 SE2d 204) (1997).

[12] OCGA §§ 16-13-32.4 (a) (school); 16-13-32.5 (a) (park).

[13] See *Allison v. State*, 259 Ga. App. 775, 778 (2) (577 SE2d 845) (2003).

[14] See, e.g., *Harper v. State*, 213 Ga. App. 611, 612-613 (2) (445 SE2d 300) (1994).

[15] *Rubaldino v. State*, 271 Ga. App. 726, 727-728 (1) (611 SE2d 68) (2005).

by surprise, and the allegations must be adequate to protect the accused against another prosecution for the same offense.[16]

The evidence at trial showed that when Glenda Curtis went to Smith's residence, Smith had cocaine in his possession, which he then sold to her. This was sufficient to prove the elements of possession with intent to distribute for purposes of finding violations of OCGA §§ 16-13-32.4 (a) and 16-13-32.5 (a).[17] Under these circumstances, we conclude that

> there was no reasonable probability that [Smith] misunderstood the charges against him, was surprised or harmed by the wording of the indictment, or is not protected against a later prosecution for the same offense.[18]

Thus, we find no material variance between the indictment and the proof at trial.[19]

Additionally, a certified tax map of Long County admitted into evidence showed that Smith's residence was within 1,000 feet of both a public park and a school. Not only did Hein and another officer testify as to the distance between Smith's residence and the school and park, but the map was drawn to scale and the jurors could determine the distance for themselves if they so chose. This was sufficient evidence to support Smith's convictions on Counts 4 and 5.[20]

3. Smith next raises a claim of double jeopardy. The record shows that the case was tried twice. In the first trial, a Long County jury initially returned a verdict of not guilty on Counts 1 and 3 and guilty on Counts 2, 4 and 5. Upon being polled, however, one juror stated that the verdict was not her verdict and the judge sent the jury back for further deliberations. The jury eventually reported that it was "hopelessly deadlocked." When polled a second time, the only count on which the jurors reached a unanimous verdict was Count 3, on which they reached a not guilty verdict.

Smith's counsel moved the trial court to accept the verdict on Count 3 and declare a mistrial as to the other counts. The State moved for a mistrial on all counts due to jury tampering. One juror testified that on two occasions during the trial, Smith's former wife "spoke with [the juror's] mother about speaking with [the juror] to do the

---

[16] (Punctuation omitted.) Id.

[17] See Tate v. State, 230 Ga. App. 186, 187 (1) (495 SE2d 658) (1998).

[18] (Punctuation omitted.) Sims v. State, 258 Ga. App. 536, 538 (2) (574 SE2d 622) (2002).

[19] See Mills v. State, 271 Ga. App. 506, 508 (610 SE2d 80) (2005).

[20] See McKay v. State, 234 Ga. App. 556, 557-558 (1) (507 SE2d 484) (1998).

right thing and help out Hymie." The message given to the juror was "that one day, [the juror's] ex-husband might be up here and that the favor would be returned." This juror testified that she understood other jurors had been contacted about the trial, but declined to name them. No other juror admitted being contacted.

The trial court declared a mistrial on all counts, and the case was retried in Tattnall County. The Tattnall County jury found Smith guilty of Counts 1, 3, 4 and 5, and not guilty of Count 2.

Smith argues that he should not have been tried a second time on Counts 1 and 3 because the Long County jury initially returned a verdict of not guilty on these counts. The trial court, however, declared a mistrial as to all counts based on evidence that at least one juror had been improperly contacted during the trial. A trial court has broad discretion in deciding to grant a mistrial, and we give great deference to its decision.[21]

Here, the trial court learned that a juror in the first trial, who had known Smith "a long time," had twice been asked by Smith's former wife to "help [Smith] out" while serving on the jury. When the trial court "has discovered facts during a trial which indicated that one or more members of a jury *might* be biased . . . the duty of the judge in this event is to discharge the jury and direct a retrial."[22]

We find the present case distinguishable from *State v. Jorgensen*,[23] which Smith cites for the proposition that a trial court cannot declare a mistrial after the jury has reached a verdict. In the present case, unlike in *Jorgensen*, the trial court conducted a hearing and ruled on the State's motion for mistrial as soon as it became aware of the alleged jury tampering. Moreover, the jury was deadlocked and had only reached a verdict on Count 3. Smith himself had moved for a mistrial as to the other counts. And even if Smith should not have been retried as to Count 3, our conclusion in Division 2 that he was entitled to a directed verdict on this count renders his argument moot. Thus, Smith was not subject to double jeopardy.[24]

4. Smith contends that the trial court erred in denying his motion in limine to exclude evidence that his probation for a prior offense had been revoked based on his arrest. Smith alleges that this evidence was "an expression of opinion by the judge that Smith had committed the crime and that he was guilty." We disagree. Smith's prior offense was admitted by the trial court as a similar transaction, and he does not object to its admission on appeal. The fact that the probation he

---

[21] See *Tubbs v. State*, 276 Ga. 751, 754-755 (3) (583 SE2d 853) (2003).

[22] (Punctuation omitted; emphasis in original.) *McCrary v. State*, 191 Ga. App. 336, 337 (381 SE2d 579) (1989).

[23] 181 Ga. App. 502, 503 (353 SE2d 9) (1987).

[24] See *McCrary*, supra; *Reed v. State*, 267 Ga. 482, 484 (1) (480 SE2d 27) (1997).

was serving for the offense was revoked when he was subsequently arrested on the charges at issue here is in no way a commentary on Smith's guilt or innocence.[25] And since the jury knew that Smith had a prior offense and knew he had been arrested on the charges before them, the fact that his probation was revoked " 'did not tell the jury anything it did not already know about [Smith].' "[26] The trial court properly denied Smith's motion in limine on the revocation of his probation.

5. Smith asserts that his trial counsel was ineffective because he failed to file a timely motion to suppress. Smith argues that a timely motion to suppress would have been granted and the fruits of the search — the marked $20 bills, the cocaine in the toilet, and the cocaine in the pill bottle — would have been suppressed. To establish ineffective assistance of counsel, Smith must show "both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense."[27]

Smith argues that a motion to suppress would have been granted because the anticipatory search warrant was invalid. He claims that law enforcement officers, rather than the magistrate, made the decision to execute the warrant. We disagree. This Court has held that anticipatory search warrants are legal.[28] Here, the magistrate set forth specific events that were required to "trigger" the serving of the warrant, all of which were satisfied prior to the warrant being served. These included a search of Deloach to ensure that he had no contraband; observation of Deloach making contact with one or both of the Curtises; Deloach asking one of the Curtises to purchase cocaine using marked money; law enforcement officers following the person or persons going to Smith's residence; and a search of the person or persons upon leaving Smith's residence. Only if drugs were found on the person leaving Smith's residence was the warrant to be served.

While Smith alleges that Deloach, the informant mentioned in the warrant application, was unreliable, the application also included Hein's recitation of his contact with Glenda Curtis and her statement to Hein that she could buy cocaine from Smith. And the anticipatory warrant required that the information provided by Deloach be corroborated before it was executed.[29]

---

[25] See State v. Jones, 196 Ga. App. 896, 897-898 (397 SE2d 209) (1990).
[26] Davenport v. State, 278 Ga. App. 16, 24 (2) (d) (628 SE2d 120) (2006).
[27] Young v. State, 280 Ga. 65, 69 (11) (623 SE2d 491) (2005).
[28] See State v. Baker, 216 Ga. App. 66 (453 SE2d 115) (1995).
[29] See Evans v. State, 263 Ga. App. 572, 575 (2) (b) (588 SE2d 764) (2003).

In evaluating whether probable cause existed for the issuance of a warrant, we look to the totality of the circumstances.[30] Here, we conclude that the corroboration from Hein's contact with Glenda Curtis and the triggers required before serving the warrant provided probable cause to believe that there was contraband on Smith's property, and a motion to suppress would therefore have been denied.[31] Because Smith cannot show that the failure to file a motion to suppress prejudiced his defense, his claim of ineffective assistance must fail.[32]

6. Our holding in Division 5 renders moot Smith's claim that the trial court erred in refusing to allow him to amend his motion to suppress evidence seized as a result of the anticipatory search warrant.

7. Smith contends that the trial court erred in charging the jury on Counts 4 and 5. He argues that he was charged with possession of cocaine with intent to distribute within 1,000 feet of a school and a park, but the charge given was that "[i]t shall be unlawful for any person to distribute, dispense or possess with intent to distribute. . . ." Smith claims that the State was required to prove the specific charges in the indictment and the jury should not have been instructed that these offenses could also be proven by distributing or dispersing cocaine.

In Georgia, "a charge on a code section in its entirety is not error where a part thereof is applicable and it does not appear that the inapplicable part misled the jury or erroneously affected the verdict."[33] In this case, the trial court read the indictment to the jury at the beginning of the jury charge and instructed it that "[t]he burden of proof rests upon the State to prove every material allegation of the indictment." The jury also had the indictment during deliberations. Reading the jury instructions as a whole, we conclude that sufficient limiting instructions were given to the jury.[34] And, as discussed in Division 2, the State introduced evidence from which the jury could conclude that Smith possessed cocaine with intent to distribute it within 1,000 feet of both a school and a park. Accordingly, the jury charges did not mislead the jury or erroneously affect the verdict.[35]

8. Smith objects to the trial court allowing Mike and Glenda Curtis to testify that they had purchased cocaine from him on other occasions, thus putting his character into evidence. The State argues

---

[30] See *Munson v. State*, 211 Ga. App. 80, 81-82 (438 SE2d 123) (1993).

[31] See id. at 82-83.

[32] See *Quinn v. State*, 221 Ga. App. 399, 403 (3) (471 SE2d 337) (1996).

[33] (Punctuation omitted.) *Sims*, supra at 540 (3).

[34] See *Bryant v. State*, 249 Ga. App. 383, 384 (1) (547 SE2d 721) (2001).

[35] See *Day v. State*, 242 Ga. App. 781, 783 (2) (531 SE2d 357) (2000).

that this evidence was properly admitted because it was necessary to explain why Smith would only sell to Mike or Glenda Curtis and not to Deloach or the undercover drug officers.

The admission of evidence is within the trial court's sound discretion.[36] Evidence of a defendant's bad character is generally not admissible to prove criminal conduct; "[i]f, however, the evidence of other acts is relevant for some other purpose than to show a probability that the defendant committed the crime because he is a man of criminal character, the evidence is admissible despite incidentally placing the defendant's character in issue."[37] Here, the Curtises did not testify about details of any prior purchases from Smith; rather, they briefly testified that Smith would sell cocaine to them because of a prior relationship. Because this testimony was necessary to explain why the Curtises were approached to make the purchase, and why neither Deloach nor Hein could accompany Glenda Curtis to Smith's residence, the trial court did not abuse its discretion in admitting it.[38]

9. Finally, Smith objects to his sentencing as a recidivist. He states that the trial court "considered and ruled upon the statute erroneously and that he would not fall into the mandatory category of a recidivist under a proper reading of the statute." Smith, however, provides no argument and no citations either to the record or to legal authority for his position, and we therefore deem it abandoned.[39]

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Barnes, J., concur.*

DECIDED MARCH 21, 2006 — 

*Phillips & Kitchings, Richard Phillips, Joseph C. Kitchings*, for appellant.

*Tom Durden, District Attorney, Lewis M. Groover, Jr., Assistant District Attorney*, for appellee.

---

[36] See *Sims,* supra; *Wolfe v. State,* 273 Ga. 670, 674 (4) (a) (544 SE2d 148) (2001).

[37] *Mikell v. State,* 274 Ga. 596, 598 (2) (555 SE2d 433) (2001).

[38] See *Johnson v. State,* 277 Ga. App. 499, 507 (4) (627 SE2d 116) (2006) (testimony about defendants' gang membership relevant to provide context of relationship amongst participants in crime); *McCarthy v. State,* 196 Ga. App. 839, 840-841 (3) (397 SE2d 178) (1990) (witness's testimony that he had previously purchased cocaine from defendant was relevant to witness's credibility and therefore admissible).

[39] See Ga. Court of Appeals Rule 25 (c) (2); *Fay v. Custom One Homes,* 276 Ga. App. 188, 194 (4) (622 SE2d 870) (2005).