## S01A0690. MIKELL v. THE STATE.
(555 SE2d 433)

FLETCHER, Chief Justice.

Joseph Perry Mikell was convicted of malice murder in the shooting death of his wife Barbara Sue Mikell.[1] He contends that the trial court erred in allowing the state to introduce testimony about two extramarital affairs as bad character evidence. Because the challenged evidence was relevant to prove identity and to impeach his testimony, we conclude that the trial court did not commit reversible error in admitting it. Therefore, we affirm.

1. Mikell contends that the evidence was insufficient to convict him of murder. The evidence at trial shows that Barbara Mikell was picking up a $50 check from a friend in downtown Atlanta when her husband called to tell her that he would not be able to have lunch with her, as they had discussed. She became angry and said, "I'll guess I'll just go home," then slammed the cell phone down on the

---

[1] The shooting occurred on May 18 or 19, 1998, and the victim's body was found on May 19, 1998. Mikell was indicted on October 8, 1998. A jury found him guilty and the trial court sentenced him to life imprisonment on March 6, 2000. Mikell filed a motion for a new trial on March 30, 2000, which was denied on October 23, 2000. Mikell filed a notice of appeal on October 12, 2000, which we treat as timely under OCGA § 5-6-38. See *McLeod v. State*, 271 Ga. 455 n. 1 (520 SE2d 692) (1999); *Gillen v. Bostick*, 234 Ga. 308, 310-311 (215 SE2d 676) (1975); *Livingston v. State*, 221 Ga. App. 563 (472 SE2d 317) (1996). The case was docketed in this Court on February 1, 2001, and oral arguments were held on April 17, 2001.

table. While driving south on I-75, she talked again with her husband at 2:17 p.m. Thirty minutes later, she checked into a motel off of I-20 in DeKalb County where she had met her husband once before their marriage. The motel was located 35 miles from their home in Butts County. She paid for the room with their joint credit card, a bill that he paid. Using her cell phone, Ms. Mikell called her husband's pager at 3:01 p.m. and 3:54 p.m., but he did not return the calls. Records show that she did not communicate that day on her cell phone with anyone besides her husband.

A motel employee found Ms. Mikell's body the next morning around 11:00 a.m. Ms. Mikell was lying on her back with a pillow over her head, wearing her bra, shorts, and underpants; a check for $50 was stuck in her bra. Her blouse was draped over water glasses and a pitcher on the dresser with her purse, keys, glasses, cell phone, and pager still in the room. There were no signs of a forced entry, struggle, or sexual activity. The medical examiner testified that she had been shot three times in the head while lying or sitting on the bed in the position where she was discovered.

Asserting an alibi defense, Mikell testified that he worked the entire day driving a lowboy truck, a vehicle that transports equipment, for his employer E.R. Snell Contractor. He told his wife during their 2:17 p.m. conversation that he would be working late, and she said she would be going to visit her daughter. He admitted that he worked by himself from 3:45 to 6:00 p.m. and did not make or receive any calls on his cell phone between 2:48 p.m. and 5:05 p.m. During that time, he was moving equipment from a subdivision two miles off of I-20 in DeKalb County to a golf course off of Highway 78 in Gwinnett County. His supervisor paged him around 4:45, and Mikell radioed back from his truck 15 minutes later saying he was on I-285. The defendant owned several guns, but none was identified as the murder weapon, which the police never found.

Two motel residents told police that they saw a lowboy truck with the E.R. Snell logo in the parking lot behind the motel on the afternoon of May 18. Although one witness testified at trial that he had been mistaken about the date, the other witness testified that he had seen both the E.R. Snell truck and a red dump truck driven by the other witness that afternoon as he was entering his room.

In addition, the state presented evidence of a mid-day telephone call between Mikell and Sonja Brown, a friend and former mistress, on May 18. During their conversation, which lasted 34 minutes, they spent ten minutes discussing her arrest for driving under the influence and ten minutes discussing his relationship with his wife; he said Barbara was complaining earlier in the year about his long hours at work and he did not know whether they were going to get a divorce. Later Mikell asked Brown to tell his lawyer that their phone

conversation had been only about Brown's DUI.

After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Mikell guilty of murder.[2]

2. Before trial, the trial court granted Mikell's motion in limine prohibiting evidence concerning his extramarital affairs, but subsequently reversed its ruling and permitted questioning about Mikell's relationship with two women. Sonja Brown testified that she met Mikell three or four times at the same motel where the victim was found and that each time he drove his lowboy truck to the motel. She remembered paging him after she checked into the motel, leaving her room or phone number on his pager. She further testified that, as a prelude to sex, he would remove her blouse first and fold or drape it neatly, but on cross-examination said that she sometimes removed her shirt and would fold or drape it. The defendant contends that this testimony about his technique in handling the blouse improperly placed his character into evidence.

The state may not introduce evidence of general character or present bad character evidence in a criminal case to prove criminal conduct.[3] If, however, the evidence of other acts is relevant for some other purpose than to show a probability that the defendant committed the crime because he is a man of criminal character, the evidence is admissible despite incidentally placing the defendant's character in issue.[4] Thus, we have previously allowed evidence of a husband's extramarital affairs when the evidence was relevant to disprove his theory that another man attacked his wife[5] and to show a wife's motive and scheme for the murder of her husband.[6]

At trial, Mikell testified that he was working when the murder was committed and challenged the failure of the police to investigate the possibility of other suspects. Brown's testimony about her prior sexual relationship with Mikell was relevant to prove identity and to show that the defendant had followed a similar pattern in having a sexual rendevous at the same motel. Although the fact that Mikell had an extramarital affair with Brown incidentally placed his character into evidence, the evidence of their prior sexual relationship would have been admitted anyway to explain their discussion about Mikell's marriage on the day that his wife was killed and his later attempts to influence Brown's description of the call. The probative value in explaining the reason the victim was found dressed in her

---

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] See OCGA §§ 24-2-2; 24-9-20.

[4] See *Johnson v. State*, 257 Ga. 731, 733-734 (363 SE2d 540) (1988).

[5] See *Peppers v. State*, 261 Ga. 338 (404 SE2d 788) (1991).

[6] See *Knowles v. State*, 246 Ga. 378 (271 SE2d 615) (1980).

bra and shorts in a motel room outweighed the prejudicial effect of the testimony concerning the different ways that Brown's blouse had been handled during their relationship.

Mikell also challenges the admission of evidence that he engaged in sexual relations with April Owens three weeks before and one week after his wife's death. Since Mikell testified that he had a good relationship with his wife and was not considering a divorce, the trial court properly admitted the evidence of this second affair for purposes of impeachment.

3. Because Mikell's claim of ineffective assistance of counsel is based on the trial court's ruling that defense counsel opened the door to the prejudicial testimony and we have affirmed the admission of the evidence on other grounds, we conclude that trial counsel did not provide Mikell with ineffective assistance of counsel by questioning witnesses about the failure to process the rape kit and other physical evidence or the state of his marriage.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 19, 2001 —
RECONSIDERATION DENIED DECEMBER 14, 2001.

*Bruce S. Harvey, David S. West,* for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Thomas S. Clegg, Jeanne M. Canavan, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Tammie J. Philbrick, Assistant Attorney General,* for appellee.