FINAL COPY
294 Ga. 560

S13A1620. WASHINGTON v. THE STATE.

BLACKWELL, Justice.

Melvin Washington, Jr., was tried by a Bibb County jury and convicted of murder and the unlawful possession of a firearm during the commission of a felony, both in connection with the fatal shooting of Tanisha Hardman. Washington appeals, contending that the evidence is insufficient to sustain his convictions, that the trial court erred when it admitted evidence of his bad character, and that he was denied the effective assistance of counsel. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] Hardman was killed on December 7, 2008. Washington was indicted on February 16, 2010, and he was charged with malice murder, felony murder, and unlawful possession of a firearm during the commission of a felony. His trial commenced on August 16, 2010, and the jury returned its verdict on August 20, 2010, finding him guilty on all counts. Washington was sentenced to a term of imprisonment for life for malice murder and a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a felony. The verdict as to felony murder was vacated by operation of law. Malcolm v. State, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Washington timely filed a motion for new trial on August 23, 2010, and he amended it on February 4, 2013. The trial court denied the motion on May 8, 2013. Washington timely filed a notice of appeal on June 5, 2013, and the case was docketed in this Court for the September 2013 term and argued on October 7, 2013. By the way, Washington asserted claims of error in his briefs with respect to a grant of immunity to a witness for the prosecution, but at argument, he expressly withdrew those claims of error, and we do not consider them in this opinion.

1. We begin with the legal sufficiency of the evidence. Viewed in the light most favorable to the verdict, the evidence shows that Washington worked at a Wal-Mart store in Macon, and although he was married, he had sexual relationships with two of his coworkers, Hardman and Lisa Coleman. In October 2008, his wife learned of his relationship with Coleman, and on December 3, his wife gave birth to his child. Two days later, Hardman took a home pregnancy test, and she told her roommates that she was pregnant and that Washington was the father of her unborn child. Also on December 5, Hardman and Washington exchanged several telephone calls and text messages. The following day, Hardman sent a text message to her cousin, in which she said that she wanted to keep the baby, but the father was "talking about not having [the baby]." She also told her cousin that she was seeing someone who was in a bad situation.

Early on the afternoon of December 7, Hardman went to a local hospital, where her pregnancy was confirmed.[2] Hardman told her cousin that she was to

---

[2] At the hospital, Hardman reported that she last menstruated in October, which was consistent with her earlier statement to her roommates that she must have become pregnant when she last was intimate with Washington on November 8. At trial, the medical examiner opined that her unborn child was conceived only a week or two before her death, but the medical examiner admitted that she had not examined Hardman's medical records, that she did not know when Hardman last menstruated, and that an obstetrician or fertility expert could better speak to the date of conception. About paternity, it could not be determined

2

meet that evening with the father of her unborn child, after her shift at the store ended. Early that evening, when she took a break from her work at the store, Hardman spoke by telephone with some relatives, to whom she revealed her pregnancy and expressed excitement about it. Also that evening, Washington drove his father from Macon to Warner Robins, and along the way, he told his father that he "probably had [gotten] a girl pregnant."[3] As Washington returned to Macon, he and Hardman spoke by telephone for about seven minutes, beginning at 8:38 p.m. Around twenty minutes later, just after Hardman left the store, they briefly spoke again by telephone. Cell tower records show that both Washington and Hardman were in the vicinity of the apartment complex where her body would be discovered on the next morning.[4] Although Washington testified at trial that he made no stops between Warner Robins and his own

_____

conclusively because the conception was relatively recent, according to a forensic biologist. In any event, the theory of the prosecution in this case did not depend upon a precise identification of the date of conception or a conclusive determination of paternity. Whether Washington was, in fact, the father of the unborn child, the prosecution urged that both Washington and Hardman believed him to be the father. We note as well that Washington was not charged with feticide. See OCGA § 16-5-80.

[3] At trial, Washington testified, and he admitted that he knew in December 2008 that he might be the father of the unborn child.

[4] This complex was only a two-minute drive from the apartment in which Washington lived.

apartment, the evidence shows that his key card was not used to reenter his apartment complex until 9:24 p.m., suggesting that he did, in fact, stop somewhere along the way. Around 7:00 a.m. on the next day, Washington went to work at the store, and so did Coleman. As soon as she arrived at the store, Coleman learned that Hardman had been killed, even though her body was not discovered until about 8:20 a.m.

When her body was discovered, Hardman was already in a state of rigor mortis, which usually occurs several hours after death. Hardman was fully clothed, she still was wearing her Wal-Mart work shirt, and her car keys and purse were found with her body. Her cell phone, however, was never found, and investigators did not obtain her cell phone call records until December 10. But when Washington returned to his home around noon on December 8, he told his wife — correctly, it turned out — that he had been the last person to call the cell phone of a woman who had been found dead. Washington also told his wife that law enforcement officers would be coming to talk with him.

According to the medical examiner, Hardman died of a contact gunshot wound to the back of her head. An Independence-brand shell casing was found near her body, and the evidence showed that it had been ejected from a 9mm

4

High Point handgun. At trial, Washington's brother-in-law testified that he had asked Washington to keep his 9mm High Point handgun, that it was loaded with Independence-brand ammunition, that Washington had not returned the handgun before Hardman was killed, and that his prior statements that the gun had been stolen were, in fact, lies. While Washington had the handgun, he offered to sell a gun to a coworker, who declined the offer.

Washington disputes the legal sufficiency of the evidence, arguing that the prosecution case was based on circumstantial evidence that does not exclude every other reasonable hypothesis because, if his own lawyer had not failed to obtain and present a large amount of evidence, the jury would have had numerous other suspects to consider.[5] But in determining the legal sufficiency of the evidence, we not only "consider all of the evidence admitted by the trial court, regardless of whether it was erroneously admitted, [but we also] disregard any additional evidence which a competent attorney might have obtained." *Green v. State*, 291 Ga. 287, 289 (1) (728 SE2d 668) (2012) (citations omitted). Moreover, "where the jury is authorized to find that the evidence, though

---

[5] As discussed below, Washington's claims that he was denied the effective assistance of counsel involve an alleged failure to investigate and offer more evidence.

circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict of guilty is unsupportable as a matter of law." *Blevins v. State*, 291 Ga. 814, 816 (733 SE2d 744) (2012) (citation and punctuation omitted). Viewing all the evidence admitted by the trial court (and only that evidence) in the light most favorable to the verdict, we conclude that it was sufficient to exclude every reasonable hypothesis other than Washington's guilt and to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also *Simmons v. State*, 291 Ga. 705, 706 (1) (733 SE2d 280) (2012).

2. We next consider the contention that the trial court erred when it admitted evidence of Washington's bad character, specifically, his extramarital relationship with Coleman. Under former OCGA § 24-2-2, "[t]he general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and

renders necessary or proper the investigation of such conduct."[6] But if "the evidence of other acts is relevant for some other purpose than to show a probability that the defendant committed the crime because he is a man of criminal character, the evidence is admissible despite incidentally placing the defendant's character in issue." *Mikell v. State*, 274 Ga. 596, 598 (2) (555 SE2d 433) (2001). Consequently, "[t]he State is authorized to present evidence of a defendant's possible motive for committing a crime, and such evidence does not become inadmissible merely because it may incidentally place the defendant's character in issue." *Garrett v. State*, 280 Ga. 30, 31 (3) (622 SE2d 323) (2005) (citations omitted). For instance, "we have previously allowed evidence of a husband's extramarital affairs when the evidence was relevant to disprove his theory that another man attacked his wife and to show a wife's motive and scheme for the murder of her husband." *Mikell*, 274 Ga. at 598 (2) (footnotes omitted).

---

[6] Because this case was tried before January 1, 2013, our new Evidence Code does not apply. See Ga. L. 2011, pp. 99, 214, § 101. We note, however, that OCGA § 24-2-2 "was superseded by OCGA § 24-4-404." *Johnson v. State*, 293 Ga. 641, 644 (6), n. 3 (748 SE2d 896) (2013) (citation omitted). See also OCGA § 24-4-405.

7

In this case, the State sought to show that Washington had a motive to conceal his extramarital affair with Hardman not only from his wife, but also from Coleman. The evidence shows that Coleman did not know about his relationship with Hardman and, although Washington insists that his affair with Coleman had ended by the time Hardman was killed, the jury could have inferred that he wanted it to continue.[7] Because the nature of Washington's relationship with Coleman was relevant to the issue of his motive for killing Hardman, it was properly admitted into evidence. See *Garrett*, 280 Ga. at 31 (3); *Knowles v. State*, 246 Ga. 378, 384-385 (5) (271 SE2d 615) (1980), disapproved on other grounds, *Hanifa v. State*, 269 Ga. 797, 803 (2) (505 SE2d 731) (1998). See also *Tucker v. State*, 249 Ga. 323, 329 (6) (290 SE2d 97) (1982); *Darling v. State*, 248 Ga. 485, 486-487 (3) (284 SE2d 260) (1981). Cf. *Herring v. State*, 288 Ga. App. 169, 175 (2) (c) (653 SE2d 494) (2007) (evidence of the defendant's sexual disposition was inadmissible in the absence of evidence linking it to the charged offense).

---

[7] Although Coleman testified that the relationship had ended in October 2008, Coleman stayed in contact with Washington, talking with him a couple of times a week until the time of trial and receiving letters from him, which were hand-delivered by a mutual friend instead of mailed to the home Coleman shares with her husband.

3. We turn at last to the claim that Washington's trial lawyer was ineffective because he failed to investigate and present evidence to the jury of other potential suspects and because he failed to cross-examine or call certain other witnesses whose testimony, Washington now says, would have strengthened his case. To prevail on a claim of ineffective assistance, Washington must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Washington must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also *Kimmelman v. Morrison*, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Washington must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). See also *Williams v. Taylor*, 529 U. S. 362, 391 (III) (120

9

SCt 1495, 146 LE2d 389) (2000). This burden, although not impossible to carry, is a heavy one. See *Kimmelman*, 477 U. S. at 382 (II) (C). We conclude that Washington has failed to carry his burden.

Washington identifies five individuals who, he says, could have been the father of Hardman's unborn child and should have been, therefore, investigated and presented to the jury as potential suspects in her killing. But as the trial court explained in its order denying the motion for new trial, Washington's lawyer testified that, with the help of two investigators, he considered whether there were any other persons with whom Hardman had a sexual relationship during the relevant time, and he could find no credible evidence of such persons. His investigation included a consideration of all of the witnesses identified by Washington, as well as interviews with the men that Hardman was rumored to have dated. The evidence on the motion for new trial showed that the lawyer could locate no credible evidence that any person besides Washington had a belief that he was the father of the unborn child, much less that any such individual was actually a viable suspect in the murder. See *Cook v. State*, 274 Ga. 891, 897 (7) (561 SE2d 407) (2002). "Despite counsel's efforts, he was unable to connect any additional suspect to the shooting." *Jennings v. State*, 288

Ga. 120, 124 (6) (e) (702 SE2d 151) (2010). As a result of his investigation, the trial court found, the lawyer made a reasonable strategic decision to contend at trial only that the State had failed to prove that Washington was guilty, rather than to attempt to make an affirmative case that some specific other person might have committed the crime, whether by calling witnesses to identify other suspects or by calling the suspects themselves. "[I]nformed strategic decisions do not amount to inadequacy under *Strickland*." *Cook*, 274 Ga. at 897 (7) (citation omitted). "In light of counsel's reasonable investigation, evidence supports the conclusion that [Washington] has failed to meet his burden of proving deficient performance by his trial counsel." *Jennings*, 288 Ga. at 124 (6) (e) (citation omitted). And in any event, Washington failed to call any of these other potential suspects to testify on his motion for new trial, and for that reason, he cannot show prejudice with respect to the failure to call them as witnesses at his trial. See *Jones v. State*, 292 Ga. 593, 599-600 (7) (c) (740 SE2d 147) (2013).

Besides the failure to point to other potential suspects, Washington claims that his lawyer was ineffective because he failed to adequately cross-examine one witness at trial and because he failed to call another. As for cross-

11

examination, the witness in question could have testified that it was not uncommon for Hardman not to come home at night, but Washington's lawyer never elicited such testimony on cross-examination, although he knew from a pretrial hearing that the witness could so testify. But at the hearing on his motion for new trial, Washington never asked his lawyer why he did not bring out the testimony on cross-examination. As we have explained, "when trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome the presumption that his conduct was reasonable." *Shaw v. State*, 292 Ga. 871, 876 (3) (b) (742 SE2d 707) (2013) (citation and punctuation omitted). A reasonable lawyer might have worried that such a vague circumstance — that Hardman sometimes did not come home at night — could have any number of explanations, that eliciting testimony about it could be perceived by the jury as an attack on the victim, and in any event, that such a circumstance did not show that Hardman was dating someone else who might have killed her, at least not strongly enough to offset the potential downside of the evidence. Washington has failed to show that not eliciting testimony from this witness about Hardman not coming home at night amounts to ineffective assistance.

As for the potential witness who was never called at trial, the trial court found, as authorized by the evidence on motion for new trial, that this witness could have contradicted the testimony of Washington's wife and brother-in-law that the brother-in-law did not leave a party he was attending at Washington's apartment on the evening of the murder. But that testimony from the wife and brother-in-law was corroborated at trial by Washington himself. A reasonable lawyer might well have wished not to undermine his own client's testimony in this way. It is settled that the determination of which defense witnesses to call and the extent of cross-examination are matters of trial strategy and tactics, and such strategic and tactical decisions do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances. *Shaw*, 292 Ga. at 876 (3) (a); *Smith v. State*, 288 Ga. 348, 353 (8) (f) (703 SE2d 629) (2010). Washington has failed to show that his trial lawyer performed in an objectively unreasonable way when the lawyer failed to call the additional potential witness.

Judgment affirmed. All the Justices concur.

Decided February 24, 2014.

Murder. Bibb Superior Court. Before Judge Christian, Senior Judge.

G. B. Moore III, Kelly L. McLain, Leonard D. Myers, Jr. for appellant.

K. David Cooke, Jr., District Attorney, Elizabeth K. Bobbitt, Doroth V. Hull, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General, for appellee.