In the Supreme Court of Georgia

Decided:   May 19, 2014

S14A0404. FAULKNER v. THE STATE.

BLACKWELL, Justice.

Kevin Wayne Faulkner was tried by a Houston County jury and convicted of murder and other crimes in connection with the fatal shooting of Emmanuel Dawson. Faulkner appeals, contending that the evidence is legally insufficient to sustain his convictions, that the trial court erred when it excluded certain testimony at trial, that the trial court erred in its charge to the jury, that he is entitled to a new trial based on newly discovered evidence, and that he was denied the effective assistance of counsel. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] The crimes were committed on May 30, 2008. Faulkner was indicted on August 13, 2008 and charged with malice murder, two counts of felony murder, aggravated assault, armed robbery, unlawful possession of a firearm during the commission of a felony, and unlawful possession of a firearm by a convicted felon. His trial commenced on April 5, 2011, and during the trial, Faulkner pled guilty to unlawful possession of a firearm by a convicted felon. The jury returned its verdict on April 12, 2011, finding him not guilty of malice murder, one count of felony murder, and aggravated assault, and guilty on all other counts. Faulkner was sentenced to imprisonment for life for felony murder in the commission of armed robbery, a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a felony, and a concurrent term of imprisonment for five years for unlawful possession of a firearm by a convicted felon. The trial court merged

1. Viewed in the light most favorable to the verdict, the evidence shows that Faulkner had often purchased crack cocaine from Dawson. On May 30, 2008, Faulkner stole his girlfriend's .22 caliber pistol. Soon afterwards, Dawson was seen getting into the passenger seat of Faulkner's van, and Faulkner drove away. While in the van, Dawson was shot just above his left ear with a .22 caliber gun, and his body was left on the side of a dirt road in Houston County. Faulkner abandoned his van in Peach County, called 911, and told law enforcement officers that he had been kidnapped by Dawson and others. In subsequent interviews, Faulkner said that, when Dawson did not want to trade crack cocaine for the gun, they picked up an unknown third person who got into the back seat, bought the gun from Faulkner, and used it to shoot Dawson. Bloodstains on Faulkner's jeans matched Dawson's DNA. Faulkner testified at trial, finally identifying the third person he claimed to have committed the crimes as Dwayne Crew. Faulkner also testified that he — at Crew's direction — helped move Dawson's body from the van and searched Dawson's pockets and socks, taking money from a pocket.

the armed robbery with the felony murder for which Faulkner was sentenced. Faulkner timely filed a motion for new trial on May 10, 2011, and he amended it on November 28, 2012. The trial court denied the motion on August 7, 2013 and amended its order on August 16, 2013. Faulkner timely filed a notice of appeal on September 5, 2013, and the case was docketed in this Court for the January 2014 term and submitted for decision on the briefs.

(a) On appeal, Faulkner contends that the evidence is legally insufficient to prove beyond a reasonable doubt that he is guilty of the crimes of which he was convicted. In support of this contention, Faulkner relies primarily on the testimony of three prison inmates, to whom Crew confessed to shooting Dawson while Crew and the inmates were together in the same jail. But that testimony was impeached by various methods. And another inmate testified that Faulkner admitted that he had shot Dawson in the head and dumped his body on the side of the road. Moreover, before and during trial, Crew himself consistently denied having been in the van or having had any involvement in Dawson's death. And none of the physical evidence proved that Crew was in the van. It is for the jury as the finder of fact "to resolve conflicts in the evidence and questions of witness credibility." Tolbert v. State, 282 Ga. 254, 256 (1) (647 SE2d 555) (2007) (citation omitted). In this case, "the jury, after considering all of the evidence, chose to believe the State's version and that [Faulkner's] witnesses were not credible." Martinez v. State, 289 Ga. 160, 161 (1) (709 SE2d 797) (2011). In all, the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Faulkner was guilty of the crimes of which he was convicted.

Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

(b) Faulkner also contends that the State failed to prove that venue as to the murder lay in Houston County. A criminal case must be tried "in the county where the crime was committed," Ga. Const. of 1983, Art. VI, Sec. II, Par. VI, and a murder generally is "considered as having been committed in the county in which the cause of death was inflicted." OCGA § 17-2-2 (c). "If it cannot be determined in which county the cause of death was inflicted, it shall be considered that it was inflicted in the county in which the death occurred." Id. And "[i]f a dead body is discovered in this state[,] and it cannot be readily determined in what county the cause of death was inflicted, it shall be considered that the cause of death was inflicted in the county in which the dead body was discovered." Id. Moreover, if a crime is committed in any vehicle "traveling within this state[,] and it cannot readily be determined in which county the crime was committed, the crime shall be considered as having been committed in any county in which the crime could have been committed through which the . . . vehicle . . . has traveled." OCGA § 17-2-2 (e). See also Bulloch v. State, 293 Ga. 179, 188 (4), n. 11 (744 SE2d 763) (2013) (OCGA § 17-2-2 (e) applied where crime was murder). Faulkner has

4

conceded that the homicide of Dawson was committed in a moving vehicle and that Dawson's body was found in Houston County. There was no clear evidence that the fatal injury was inflicted anywhere other than Houston County. Accordingly, the State sufficiently proved venue as to the murder. See Walton v. State, 293 Ga. 607, 609 (2) (748 SE2d 866) (2013).

Faulkner argues, however, that the State could not have proven venue under the provisions OCGA § 17-2-2 (c) (homicide) or OCGA § 17-2-2 (e) (moving vehicle) because there was no jury charge on those provisions. But any deficiency in the jury charge does not control the separate question of whether the proof of venue was sufficient. See Lanham v. State, 291 Ga. 625, 626-627 (2), (3) (732 SE2d 72) (2012). Cf. Thompson v. Brown, 288 Ga. 855, 856 (708 SE2d 270) (2011) (a habeas appeal where the warden's argument based on OCGA § 17-2-2 (e) was waived because it was neither raised in a jury charge at trial nor argued by the warden before the habeas court). And to the extent that Faulkner is complaining of the lack of a jury charge on OCGA § 17-2-2 (c) and (e), it appears that such a complaint is not properly before us because, unlike the allegedly insufficient evidence of venue, it was not enumerated as error. See Scott v. State, 302 Ga. App. 111, 113 (1) (b) (690 SE2d 242) (2010) (relying on Felix v. State,

5

271 Ga. 534, 539, n. 6 (523 SE2d 1) (1999)). Even if Faulkner has properly complained about the jury charge, his claim is without merit. While we continue to urge trial courts to give appropriate charges on venue tailored to the facts of the case, see Lynn v. State, 275 Ga. 288, 290 (3) (565 SE2d 800) (2002), the failure to give such a charge on venue does not require a new trial. See Lanham, 291 Ga. at 627 (3); Shahid v. State, 276 Ga. 543, 544 (2) (579 SE2d 724) (2003). In this case, the trial court did charge that "criminal actions shall be tried in the county in which the crime was committed. Venue, that is that the crime was committed in Houston County, is a jurisdictional fact that must be proved by the State beyond a reasonable doubt, as to each crime charged in the Indictment, just as any element of the offense." Additional clarification that venue could be proper in the county where Dawson's body was found or in a county through which the vehicle traveled would only have benefitted the State.

2. We turn next to Faulkner's claim that the trial court erred when it excluded an officer's expected testimony that Crew would do anything to be placed in the same disciplinary "pod" at the jail as Faulkner. Crew did not make any statement to this effect; the officer was merely expected to testify to his opinion based on behavioral problems with Crew. And after a proffer of that

6

testimony, the trial court excluded it as an improper and speculative opinion about Crew's state of mind. See former OCGA § 24-9-65.[2] The opinions of lay witnesses "are admissible only when it is necessary in order for a witness to convey those same observations to the jury. A lay witness may not state his opinion when the facts relied upon by the witness can be clearly described for the jury, and the jury can rely upon those same facts and reach its own opinion." Hines v. State, 276 Ga. 491, 494 (4) (578 SE2d 868) (2003) (punctuation and footnotes omitted). The admission or exclusion of lay opinion evidence is committed to the sound discretion of the trial court, and we will not interfere with such a ruling absent an abuse of that discretion. See Durham v. State, 281 Ga. 208, 211 (4) (636 SE2d 513) (2006); Hines v. State, 320 Ga. App. 854, 862 (3) (740 SE2d 786) (2013).

In this case, the opinion testimony that Faulkner sought to introduce related to the intent or motivation for Crew's misbehavior in jail. "While opinion evidence of state of mind or mental condition may be admissible, usually opinion evidence as to one's motives or intent is not. Intent is something which exists in the human mind and can be manifested only by external acts from which an inference of

---

[2] This case was tried under the old Evidence Code, see Ga. L. 2011, pp. 99, 214, § 101, and for that reason, we cite former OCGA § 24-9-65. We note, however, that former OCGA § 24-9-65 has been replaced with OCGA § 24-7-701 (a). See Jordan v. State, 293 Ga. 619, 621 (2) (a), n. 2 (748 SE2d 876) (2013).

7

intent will arise." <u>Michaels v. Gordon</u>, 211 Ga. App. 470, 473 (2) (a) (439 SE2d 722) (1993) (citations and punctuation omitted). See also <u>Cohen v. Hartlage</u>, 179 Ga. App. 847, 849-850 (348 SE2d 331) (1986); Paul S. Milich, Ga. Rules of Evidence § 15:2 ("lay witnesses are usually not allowed to render opinions as to the intent or motives of others") (footnote omitted). We find no abuse of discretion in the ruling that excluded opinion testimony that the intent or motive for Crew's misbehavior in jail was to obtain placement in the same part of the jail as Faulkner.

3. Faulkner also contends that the trial court erred when it denied a new trial based on newly discovered evidence. At a hearing on Faulkner's motion for new trial, Gregory Fields testified that he first met and talked with Faulkner in prison, but that some years ago, he had seen Crew exit Faulkner's van at a motel in Fort Valley. According to Faulkner, this testimony is the only evidence corroborating his own trial testimony that Crew was in the van and was dropped off in Peach County after the shooting. "To obtain a new trial based on newly discovered evidence, a defendant must show, among other things, that the new evidence is 'so material that it would probably produce a different verdict' and 'is not cumulative.'" <u>Brinson v. State</u>, 288 Ga. 435, 437 (3) (704 SE2d 756) (2011) (quoting <u>Timberlake v. State</u>, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980)). Even

8

if a jury were to believe that Fields remembered the van from which Crew exited — a van owned by a person whom he did not know at the time — Fields could not say specifically in what month or year he saw Crew and the van, Fields could not give the name of the motel, and he did not claim to have seen Faulkner at that time. See id. (new evidence related to a different time from the murder); Ingram v. State, 276 Ga. 223, 224 (2) (576 SE2d 855) (2003) (new evidence that a third party asked for bullets did not show that he had a gun at the time of the shooting); Simmons v. State, 174 Ga. App. 906, 910 (3) (331 SE2d 923) (1985) (knowledge of newly discovered witness was limited to certain events which took place after the crimes). Moreover, Faulkner mounted a vigorous defense at trial, advancing the theory that Crew was the killer, and he called several witnesses — and testified himself — in an attempt to support that claim. See Hester v. State, 282 Ga. 239, 242 (3) (647 SE2d 60) (2007). See also Brinson, 288 Ga. at 437 (3); Ingram, 276 Ga. at 224 (2). Considering the whole record, we cannot say that the evidence now offered by Fields would probably have produced a different result, and we therefore conclude that the trial court did not abuse its discretion when it denied a new trial on the ground of newly discovered evidence. See Brinson, 288 Ga. at 437 (3); Hester, 282 Ga. at 242 (3); Ingram, 276 Ga. at 224 (2).

4. We next consider Faulkner's claim that his trial lawyer was ineffective when she failed to object to an argument the prosecutor made to the jury. To prevail on a claim of ineffective assistance, Faulkner must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Faulkner must prove that she performed her duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Faulkner must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden, although not impossible to carry, is a heavy one. See Kimmelman, 477 U. S. at 382 (II) (C). We conclude that Faulkner has failed to carry his burden.

During closing argument, the State argued that, even if a third person was in the van, the jury still could convict Faulkner as a party to the crimes because he aided or abetted the commission of those crimes when he helped the shooter move Dawson, rob him, and get away. Faulkner claims that this argument amounted to an implicit misstatement of law to which his lawyer should have objected because his guilt of felony murder could not be based on acts that occurred after the victim was already dead and that could not have proximately caused the death. But felony murder may be based on an armed robbery where the perpetrator kills the victim first and then takes his property, and if Faulkner was not the perpetrator, his participation in that crime could have been inferred from his presence, companionship, and conduct before, during, *and after* the offense was committed. See Curinton v. State, 283 Ga. 226, 228-229 (657 SE2d 824) (2008). It therefore appears that "no legally improper statements were made and, accordingly, any objection advanced by trial counsel would not have prevailed. The failure to make a meritless objection is not evidence of ineffective assistance." Scott v. State, 290 Ga. 883, 889 (7) (a) (725 SE2d 305) (2012) (citations omitted).

Even if an objection would have had some merit, Faulkner never asked his lawyer — when the motion for new trial was heard — why she did not object to

11

the State's argument. "As we have explained, when trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome the presumption that his conduct was reasonable." Washington v. State, 294 Ga. 560, 566 (3) (755 SE2d 160) (2014) (citation and punctuation omitted). A reasonable lawyer might well have decided that, rather than make an objection of questionable merit, she would rely on her own closing argument — during which she extensively explained why Faulkner could not have been a party to crimes perpetrated by Crew — and on the trial court's thorough charge on parties to a crime. In short, Faulkner has failed to show that not objecting to the allegedly improper statements in the State's closing argument amounts to ineffective assistance.[3]

5. Last, Faulkner complains of the trial court's instruction to the jury that "[a] statement the defendant made after arrest has been offered for your consideration" and that before considering it as evidence for any purpose, the jury

---

[3] In view of our analysis, we need not consider Faulkner's claim that the prejudicial effect of the prosecutor's implicit misstatement of law was "exacerbated" by several strong, unflattering characterizations of Faulkner. We note, however, that similar characterizations have been held to come within the wide permissible range of argument so long as they are reasonable inferences drawn from the evidence. See Simmons v. State, 266 Ga. 223, 228 (6) (b) (466 SE2d 205) (1996), overruled on other grounds, Wall v. State, 269 Ga. 506, 508-509 (2) (500 SE2d 904) (1998).

12

must determine whether Faulkner was warned of his constitutional rights and whether he understood and knowingly gave up those rights. As Faulkner recognizes, however, he did not object to this instruction, and for that reason, we review it only for plain error. See OCGA § 17-8-58 (b). See also State v. Kelly, 290 Ga. 29, 31-32 (1) (718 SE2d 232) (2011).

The jury charge of which Faulkner complains was substantially identical to the pattern charge on the statement of a defendant. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, §§ 1.32.20–1.32.21 (4th ed. 2007, updated through July 2012).[4] See also McKibbins v. State, 293 Ga. 843, 854 (7) (750 SE2d 314) (2013). Indeed, Faulkner does not dispute that the charge is an accurate statement of the law. See Blake v. State, 292 Ga. 516, 518 (2) (739 SE2d 319) (2013) ("This being an accurate statement of the law, we find no error, much less any plain error . . .."). Instead, he argues that the charge was not adjusted to the evidence because, before he was formally arrested and advised of his constitutional

---

[4] These Suggested Pattern Jury Instructions have since been revised and now read as follows: "A statement that the defendant allegedly made (while in custody) has been offered for your consideration. Before you may consider this as evidence for any purpose, you must determine whether the defendant's statement was voluntary . . . (and, if the statement was given in custody, whether the defendant was properly advised of his/her constitutional rights.)" Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.32.16 (4th ed. 2007, updated through January 2014).

13

rights, he had already made statements while in custody, having been searched and placed in a holding cell in Peach County, transferred to Houston County, and interviewed for several hours.[5]

A trial court is not required to instruct the jury to make an independent determination regarding the voluntariness of a custodial statement or the waiver of his constitutional rights where no evidence of nor claim of involuntariness or constitutional violation appears. See Richardson v. State, 265 Ga. App. 880, 884 (3) (595 SE2d 678) (2004). In this case, Faulkner never sought to exclude his pre-arrest statements, and he expressed "[n]o objection" to the entire video recording of his interview. Defense counsel played portions of the interview during Faulkner's testimony while he explained, among other things, when and how he decided to start telling the truth. During closing argument, Faulkner relied on that testimony and on his behavior as reflected in the video recording. As the trial court found in its order denying the motion for new trial, Faulkner "conceded the voluntariness of his statement on the record. He called the police initially to report his van . . . stolen and was transported at his request to Houston County . . .."

---

[5] To the extent that Faulkner is claiming that the trial court erred when it *failed* to give a charge that addressed his pre-arrest statements, the *failure* to charge is also reviewed only for plain error, as Faulkner neither requested such a charge nor objected to the failure to give it. See Shaw v. State, 292 Ga. 871, 872-873 (2) (742 SE2d 707) (2013).

14

During initial questioning, Faulkner was not a suspect, and officers believed that he was a victim of a kidnapping and carjacking. And as the trial court also found, "[t]he entire statement was videotaped, portions are greatly self-serving, and there is no evidence that the statement was not freely and voluntarily given." Because Faulkner neither asserted nor presented evidence that his pre-arrest statements to police were involuntary or otherwise violated his constitutional rights, see id., there was no effect on his substantial rights, and the trial court's jury charge was not, therefore, plain error. See Kelly, 290 Ga. at 33 (2) (a).

Judgment affirmed. All the Justices concur.