S08A0807. SAVIOR v. THE STATE.
(668 SE2d 695)

SEARS, Chief Justice.

The appellant, Mustafa Savior, appeals from his convictions for malice murder and the possession of a firearm during the commission of a crime stemming from the shooting death of Brandon Ingram.[1] On appeal, Savior contends, among other things, that he received ineffective assistance of counsel and that the trial court

---

[1] The crimes occurred on September 1, 2002, and Savior was indicted on November 27, 2002, for malice murder, felony murder, the possession of a firearm during the commission of a felony, and carrying a concealed weapon. On July 12, 2003, a jury found Savior guilty of malice murder and the possession offense and not guilty of felony murder and carrying a concealed weapon. The trial court sentenced Savior to life in prison for the malice murder

erred in refusing to give his requested charge on mutual combat. Because we find no merit to Savior's contentions, we affirm his convictions.

1. On September 1, 2002, Tavares Critton attended a birthday party for his sister at El Rocko's Lounge, a nightclub in Savannah, Georgia. Savior was dating Critton's sister and was also at the nightclub. Critton testified that Savior got into a confrontation with a man at the nightclub named Malcolm Brown and that Savior told Brown he was going to "get" Brown after the club closed. Savior then left the nightclub. When the nightclub closed about 2:30 a.m., Critton walked outside and saw Savior leave his car and walk toward the nightclub holding his right hand by his side in a manner to suggest he was carrying a gun. Critton told Savior to "leave it alone," but Savior continued to wait in the parking lot. A security guard told Savior that, if he was going to fight, he needed to do it somewhere else. According to Critton, when Brown left the nightclub, Savior walked around the security guard and hit Brown, and several people wrestled Savior to the ground. Critton saw a gun in Savior's hand, saw Savior free himself, and saw Savior fire his gun, hitting a bystander named Brandon Ingram in the chest. Critton further saw Savior try to fire the gun at Brown, but it jammed, and Savior jumped in his car and drove off. Critton later spoke to Savior on the phone, and Savior told him he had not come to shoot anyone, but, when he got wrestled to the ground, his "instincts told him pull his gun out." Savior told Critton he meant to shoot Brown. Ingram later died from his chest wound.

Savior's foster brother, Darnell Harris, worked as a bouncer at the nightclub. He testified that Brown and Savior got into a confrontation over a woman, which resulted in security personnel putting Savior outside the club. When Savior was removed from the club, Harris heard Savior tell Brown he was going to kill him. Harris also saw Savior retrieve a gun from his car, and he (Harris) told outside security personnel at the club to keep an eye on Savior. Before closing time, Harris saw Savior sitting outside the club on a car with his gun and heard him again threaten to kill Brown. According to Harris, when the nightclub closed and the patrons were leaving, Savior got off the car and pulled out his pistol. Security then wrestled Savior to the ground, but Savior got free and fired his pistol

---

conviction and to five consecutive years in prison on the possession offense. On July 15, 2003, Savior's trial counsel filed a motion for new trial. Thereafter, Savior obtained new counsel for appeal, and new counsel filed amended motions for new trial August 29, 2006, and November 13, 2006. The trial court denied Savior's motion for new trial, as amended, on March 15, 2007. On December 6, 2007, the trial court granted Savior an out-of-time appeal, and on December 11, 2007, Savior filed a notice of appeal. The case was docketed in this Court on January 23, 2008, and was submitted for decision on briefs.

several times, with the first bullet striking Johnnie Pierce in the ankle and the second bullet striking Brandon Ingram in the chest. Harris testified that Ingram had not argued with Savior and was merely a bystander. Harris also saw Savior point the gun at Brown and pull the trigger. The gun, however, jammed.

Savior testified at trial, stating that Brown started an argument with him over a woman at the club and that he (Savior) left the club and went out to the parking lot to avoid an altercation. As Savior was sitting in his car waiting for Critton to come out of the club at closing, he saw Brown and some of his friends running to their car, and he (Savior) retrieved his gun from his car in case Brown was retrieving a weapon. According to Savior, he put the gun under his waistband, with the gun being held in place by his belt and covered by his shirt. Savior said he then walked up to the front of the club to wait for Critton to give him a ride home and Brown approached him and hit him. He also testified he and Brown started fighting; a group of guys jumped on him; someone kicked him in the face; he then heard several gunshots; and everyone then got off him. The first and only time he pulled his gun out, Savior said, was after the shooting had stopped and everyone had gotten off him. Savior stated a bouncer told him to put his gun up and go home, and he and Critton then left the club. Savior testified he never fired his gun.

Before trial, Savior gave a statement to the police in which he denied having an argument with anyone inside the club. For most of the 40 minute interview, Savior repeatedly stated he was "sucker punched" by someone as the club was closing, he hit the person back, several people jumped on him, and he then heard gunshots. At the end of the interview, Savior mentioned for the first time he had a gun with him, but he denied he had shot anyone.

After the shooting, Savior fled the scene and went to Hinesville, Georgia. However, about 6:00 p.m on the day of the crime, Savior went back to Savannah and turned himself in to the police.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Savior guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. Savior contends that, in a taped statement on the night of the crime, Johnnie Pierce told the police Savior did not shoot the victim, and that trial counsel provided deficient performance in failing either to locate and subpoena Pierce to testify at trial or to seek to

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

have his statement admitted under the necessity exception to the hearsay rule.[3]

To prevail on this claim, Savior must show both that trial counsel provided deficient performance and that the deficient performance prejudiced his defense.[4]

> To meet the first prong of the required test, the defendant must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case.[5]

Moreover, "a court need not determine whether counsel's performance was deficient" if it can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice."[6]

Contrary to Savior's claim regarding Pierce's taped statement, our review of the statement, which was introduced at the hearing on the motion for new trial, does not show that Pierce stated Savior did not shoot the victim. Rather, Pierce said a person who had on an orange shirt (other evidence at trial showed Savior was wearing an orange shirt) was wrestled to the ground and was at the bottom of a pile of people. Pierce saw the person in the orange shirt fighting another person, but he did not see anyone pull or shoot a gun. According to Pierce, the first shot that was fired struck him (Pierce) in the ankle, and he then "disappeared." As he was leaving, he heard several more shots.

Because Pierce stated he did not see who fired the shots in question, because other witnesses testified consistently with Pierce's pre-trial statement that Savior had been wrestled to the ground, and because those witnesses added they saw Savior fire his gun despite being wrestled to the ground, we conclude Savior has failed to carry his burden to show that, if Pierce had testified at trial, there is a

---

[3] According to trial counsel's testimony at the hearing on the motion for new trial, he knew Pierce had moved to Florida, but did not have an address for him or any way to contact him. He also added he was retained by Savior's family and discussed with them the prospect of obtaining money to hire an investigator. The family, however, did not have money to do so.

[4] *Terry v. State*, 284 Ga. 119, 120 (663 SE2d 704) (2008).

[5] Id. (quoting *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985)).

[6] *Strickland v. Washington*, 466 U. S. 668, 697 (104 SC 2052, 80 LE2d 674) (1984).

reasonable probability the result of the trial would have been different.[7]

3. Savior contends trial counsel provided ineffective assistance by failing to preserve the pre-trial statements of Antonio Gadsen and Charles Gordon for use at trial.

At trial, Gadsen acknowledged he had spoken with defense counsel at a local detention center following his arrest on a crime unrelated to the present case. Defense counsel asked Gadsen whether he was at the El Rocko Lounge on the night of September 1, 2002. Gadsen responded he was down the street from the lounge but was not at it. In response to another question from defense counsel, Gadsen stated he had never told defense counsel Savior was not the shooter at the club. At the motion for new trial hearing, trial counsel stated that Gadsen had, in fact, told him initially Savior was not the shooter.

The allegation of ineffectiveness regarding Charles Gordon concerns what Gordon allegedly heard another witness, Arthur Baker, say before trial. According to Baker's testimony at trial, he saw Savior wrestled to the ground, he (Baker) then heard shots fired, and he then ran after the first shot and could not see who fired any of the shots. When defense counsel asked Baker if he (Baker) had fired a shot into the air, Baker denied he had done so. Defense counsel then called Charles Gordon as a witness and asked Gordon if he had heard Baker state he had fired a shot into the air during the fight in order to get people off Savior. At trial, Gordon denied hearing the statement in question. During the motion for new trial hearing, trial counsel testified that Gordon had told him he had heard Baker make the statement in question.

According to trial counsel's testimony at the hearing on Savior's motion for new trial, Gadsen and Gordon had seemed eager to cooperate when he first spoke to them and he thus had no reason to believe they would not do so at trial. Trial counsel thus did not undertake to record their statements or take a witness with him when he spoke with them. Examining counsel's conduct from his perspective at the time of the trial and under the particular circumstances of the case,[8] we conclude Savior has not shown that trial counsel failed to exercise reasonable professional judgment in failing to record the statements of the two witnesses. Moreover, because two eyewitnesses who knew Savior well testified they saw Savior fire the shots in question, we conclude that, even if trial counsel was ineffective in failing to question the witnesses about their prior

---

[7] *Terry*, 284 Ga. at 120.

[8] *Terry*, 284 Ga. at 120.

statements, Savior has failed to establish there is a reasonable probability that, if trial counsel had done so, the outcome of the trial would have been different.[9]

4. Savior contends trial counsel provided ineffective assistance by failing to request charges on voluntary manslaughter, self-defense, and accident. However, trial counsel testified he did not request these instructions because they were contrary to the defense strategy, based on Savior's testimony, of contending Savior did not have a gun in his hands until the fighting and shooting were finished. Because defense "counsel is entitled to base the defense on the veracity of the client's assertions,"[10] and because the requested instructions were inconsistent with Savior's claims, it was reasonable for counsel not to request the charges in question.[11]

5. Although Savior raises other allegations of ineffective assistance, we have examined them and find them to be without merit.[12]

6. Savior contends the trial court erred in refusing the jury's request to re-charge it on the issues of presence and intent. Our review of the record, however, shows the trial court did re-charge on the matters requested by the jury.[13]

7. Savior also contends the trial court erred in failing to give his requested charge on mutual combat. The record, however, reveals Savior did not request such a charge. Moreover, although Savior contends the trial court should have charged on mutual combat so the jury would have had the option of finding him guilty of voluntary manslaughter,[14] the record shows Savior specifically requested the trial court not charge the jury on voluntary manslaughter. Accordingly, Savior cannot be heard to complain on appeal that the trial court erred by failing to charge on mutual combat.[15]

*Judgment affirmed. All the Justices concur.*

---

[9] *Rivers v. State*, 283 Ga. 1, 4-5 (655 SE2d 594) (2008).

[10] *Sparks v. State*, 277 Ga. 72, 74 (586 SE2d 645) (2003).

[11] Id. at 74-75.

[12] These claims consist of allegations that trial counsel was ineffective in calling an expert witness; in failing to object to a part of the prosecutor's opening statement; in failing to object to certain aspects of the prosecutor's closing argument; in failing to object to the admission of photographs of the victim; and in failing to move for severance of the count of carrying a concealed weapon.

[13] See *Styles v. State*, 279 Ga. 134, 136 (610 SE2d 23) (2005) (trial court acts within its discretion in limiting recharge to issues requested by jury).

[14] See *Sinkfield v. State*, 266 Ga. 726, 727 (470 SE2d 649) (1996) ("a charge on mutual combat enables a jury to find a criminal defendant guilty of voluntary manslaughter in lieu of murder"); Robert E. Cleary, Jr., Kurtz Criminal Offenses and Defenses in Georgia, p. 722 (2008 ed.) ("provocation in most voluntary manslaughter cases is 'mutual combat' ").

[15] *Smith v. State*, 267 Ga. 372, 375 (477 SE2d 827) (1996).

DECIDED OCTOBER 27, 2008.

*Jennifer R. Burns, Gabrielle A. Pittman,* for appellant.

*Spencer Lawton, Jr., District Attorney, Jerome M. Rothschild, Jr., Assistant District Attorney, Thurbert E. Baker, Attorney General, Christopher R. Johnson, Assistant Attorney General,* for appellee.