302 Ga. 820
FINAL COPY

S17A1928, S17A1929.  BLACKWELL v. THE STATE; and vice versa.

HINES, Chief Justice.

In Case No. S17A1928, Samuel Rickey Blackwell appeals his convictions for malice murder, two counts of aggravated assault, two counts of cruelty to children in the first degree, and possession of a firearm during the commission of a felony, all in connection with the fatal shooting of Deirdre Smith and the wounding of two children.  Blackwell challenges the sufficiency of the evidence of his guilt, the effectiveness of his trial counsel, and certain instructions to the jury.  In Case No. S17A1929, the State appeals the trial court's denial of its motion to vacate Blackwell's sentence of life in prison for murder as void and to enter a sentence of life in prison without the possibility of parole.  For the reasons that follow, we affirm in both cases.[1]

---

[1] The crimes occurred on September 16, 2013.  On December 13, 2013, a Cobb County grand jury indicted Blackwell, along with Khalil Kelly, for malice murder, two counts of felony murder, four counts of aggravated assault with a deadly weapon, two counts of cruelty to children in the first degree, and possession of a firearm during the commission of a felony.  Blackwell was also charged with a third count of felony murder, and Kelly was

1. Construed to support the verdicts, the evidence showed the following.
On the evening of September 16, 2013, Dionna Jackson and Takeisha Lindsey
began to physically fight in the parking lot of an apartment complex. As the two
girls fought, Jackson's boyfriend, Khalil Kelly, walked about the scene with his
arms folded and a gun tucked into his pants. Several witnesses felt that Kelly
presented a threat to those in the parking lot, and one neighbor called 911.
Smith, who was the mother of Lindsey's boyfriend, Darrold Hadley, went out
to break up the fight. Blackwell also came outside and asked about breaking up
the fight. Kelly began arguing with Blackwell and told him to "get the 'F' back

additionally charged with a fifth count of aggravated assault and possession of a handgun by
a minor. Blackwell was tried jointly with Kelly before a jury January 26-30, 2015, and both
were found guilty on all counts. On February 4, 2015, Blackwell was sentenced to life in
prison for malice murder, two consecutive terms of twenty years in prison for aggravated
assault upon the two children, consecutive terms of twenty years on probation for the two
counts of cruelty to children, and a consecutive term of five years in prison for possession
of a firearm during the commission of a felony. The felony murder verdicts were vacated by
operation of law, and the remaining counts of aggravated assault merged with the malice
murder for the purpose of sentencing. Trial counsel filed a motion for new trial on
Blackwell's behalf on February 11, 2015, and the motion was amended by new counsel on
May 16, 2016 and again on July 21, 2016. The State's motion to vacate Blackwell's sentence
as void was filed on February 19, 2016 and denied on October 18, 2016. The motion for new
trial, as amended, was denied on October 19, 2016. Blackwell filed a notice of appeal on
October 27, 2016, and the State filed one on November 9, 2016. The case was docketed in
this Court for the August 2017 term. The appeal was orally argued on November 13, 2017.

inside before some stuff goes down." This expression was understood by those in the neighborhood to be a very serious threat that would generally include fighting or shooting. Blackwell returned to his apartment for about one minute. When he came back outside, Blackwell asked Hadley if Kelly was in his family, and Hadley answered that he did not know Kelly. Blackwell immediately began shooting a .40 caliber pistol at Kelly, who fired back with a 9-millimeter pistol. The two continued to shoot at each other from some distance with other people caught in the middle. Smith died at the scene from gunshot wounds. Lindsey's four-year-old brother was wounded in his upper right leg, and her ten-year-old sister was wounded in her right hip. After the gunfight, Blackwell fled in an automobile and, four days later, turned himself in to police. Kelly also fled and subsequently was taken to a hospital for treatment of gunshot wounds to his chin and left foot.

Blackwell argues that there was no evidence that he knew Smith at all or intended any harm to her, much less that he acted with express or implied malice toward her. From the circumstances proven in this case, however, a rational jury could have inferred that Blackwell shared a common criminal intent with Kelly to engage in a gunfight in the presence of innocent bystanders, and even though

3

Smith evidently was not an intended victim of the gunfight and Kelly fired the fatal shot, the evidence was sufficient for a rational trier of fact to find that Blackwell was a party to the crime of malice murder under the doctrine of transferred intent. See *Coe v. State*, 293 Ga. 233, 235 (1) (748 SE2d 824) (2013); see also *Giddens v. State*, 299 Ga. 109, 111 (1) (b) (786 SE2d 659) (2016); *Jones v. State*, 292 Ga. 656, 658 (1) (a) (740 SE2d 590) (2013). Moreover, we conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial authorized the jury to find Blackwell guilty beyond a reasonable doubt of all crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Blackwell also argues that when the trial court instructed the jury what was required to find Blackwell guilty of felony murder, it used the term "murder" instead of "felony murder,"[2] thereby conveying the notion that the jury would be authorized to convict Blackwell of malice murder even without

---

[2] Blackwell specifically complains of the following sentence in the trial court's charge:

> If you find and believe beyond a reasonable doubt that a defendant committed the homicide alleged in this bill of indictment at the time a defendant was engaged in the commission of the felonies of aggravated assault or possession of a firearm by a convicted felon, then you would be authorized to find the defendant guilty of murder, whether the homicide was intended or not.

4

evidence of malice toward Smith. But any deficiency in the jury charge does not control the separate question of whether the proof of malice was sufficient, and Blackwell's complaint about the jury charge is not itself properly before us because he failed to object to that charge at trial and, "unlike the allegedly insufficient evidence of [malice murder], it was not enumerated as error." *Faulkner v. State*, 295 Ga. 321, 323-324 (1) (b) (758 SE2d 817) (2014). See also *Terry v. State*, 291 Ga. 508, 509 (2) (731 SE2d 669) (2012) (review of a jury instruction for plain error is available only "if the error is properly enumerated and argued on appeal"). Even assuming that Blackwell has properly complained about the jury instruction, it was taken from the pattern charge, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 2.10.30 (4th ed. 2007); the trial court specifically indicated that it was defining felony murder; and, read as a whole, the jury charge "clearly did not commingle malice murder and felony murder together and confuse the jury into believing that the two are the same." *Parker v. State*, 282 Ga. 897, 900 (7) (655 SE2d 582) (2008).

2. Blackwell does enumerate as error the trial court's jury charges on accident and transferred intent, asserting that, taken together, they were misleading and contradictory. But he "did not object to [those] instruction[s] [at

5

trial], and for that reason, we review [them] only for plain error.  See OCGA §

17-8-58 (b).  See also *State v. Kelly*, 290 Ga. 29, 31-32 (1) (718 SE2d 232)

(2011)." *Faulkner*, 295 Ga. at 327 (5).  As we have often explained, review for

plain error means that we will reverse the trial court only if there was an

instructional error that "was not affirmatively waived, was obvious beyond

reasonable dispute, likely affected the outcome of the proceedings, and seriously

affected the fairness, integrity, or public reputation of judicial proceedings."

*Herrington v. State*, 300 Ga. 149, 151 (2) (794 SE2d 145) (2016) (citation and

punctuation omitted).  The appellant has the burden of showing a clear or

obvious error and further making an affirmative showing that the error probably

did affect the outcome below.  *Lyman v. State*, 301 Ga. 312, 317 (2) (800 SE2d

333) (2017).

With these principles in mind, we turn now to examine the language of the

charges that we must review for plain error.  The charge on the affirmative

defense of accident began as follows:  "No person shall be found guilty of any

crime committed by misfortune or accident in which there was no criminal

scheme, undertaking or intention."  This language was correct in substance.  See

*Hamilton v. State*, 260 Ga. 3, 5 (5) (389 SE2d 225) (1990).  Immediately before

6

that accident charge, the instruction on transferred intent stated that, "[i]f one intentionally commits an unlawful act, yet the act harmed a victim other than the one intended, it is not a defense that the defendant did not intend to harm the actual person injured." This charge also fairly covered the correct legal principles related to transferred intent. See *Armstrong v. State*, 250 Ga. App. 784, 785-786 (552 SE2d 920) (2001).

Blackwell contends, however, that these successive charges effectively negated the accident instruction by telling the jury that there could be an accident if Blackwell had no intent, but that under the legal fiction of transferred intent, it did not matter if he had no intent. But it is not difficult to understand the difference in the two instructions at issue. The charge on transferred intent addresses the circumstance of an intentional act by which the defendant intended to harm someone other than the injured person, while the charge on accident deals with the absence of any criminal intention whatsoever. See *Berry v. State*, 267 Ga. 476, 478 (3) (480 SE2d 32) (1997) (relating in part to the difference between charges on accident and transferred intent).

Moreover, where, as here, a defendant complains of the juxtaposition of correct statements of law in the charge to the jury, we apply the usual rule that

7

they must be read in context of the whole jury charge. See *Pollard v. State*, 230 Ga. App. 159, 160 (3) (495 SE2d 629) (1998). In this case, the trial court thoroughly charged the jury on the presumption of innocence, the burden to prove each element of the crime beyond a reasonable doubt, and the definition of a crime as being a joint operation of an act and intention. The court specifically instructed the jury that "intent is an essential element of any crime and must be proved by the state beyond a reasonable doubt." And the court later charged that, "in order to prove its case, the state must show intent [and] must negate or disprove mistake, accident and lack of justification." It therefore does not appear that the charges on accident and transferred intent, assessed in the context of the entire charge and not from isolated excerpts, were confusing or misleading with respect to criminal intent. See *Berry*, 267 Ga. at 478 (3). Accordingly, Blackwell has failed to show either an obvious instructional error or an error that likely affected the outcome of his trial, and it follows that there was no plain error.

3. Blackwell asserts that his trial counsel rendered ineffective assistance by pursuing an all-or-nothing trial strategy and waiving a jury charge on voluntary manslaughter as a lesser included offense without consulting

8

Blackwell. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), "a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different." *Harvey v. State*, 300 Ga. 598, 606 (9) (797 SE2d 75) (2017) (citations omitted). "While the test imposed by *Strickland* is not impossible to meet, the burden is a heavy one." *Faust v. State*, 302 Ga. 211, 217 (4) (805 SE2d 826) (2017) (citation and punctuation omitted). For Blackwell "to satisfy the first requirement of *Strickland*, he has to overcome the strong presumption that his trial counsel's performance was within the wide range of reasonable professional conduct, and that counsel's decisions were the result of reasonable professional judgment." *Schmidt v. State*, 297 Ga. 692, 696 (3) (778 SE2d 152) (2015) (citation omitted). The reasonableness of counsel's conduct must be evaluated "from counsel's perspective at the time of trial and under the particular circumstances of the case, and decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a

9

course." *Daniels v. State*, 302 Ga. 90, 94 (2) (805 SE2d 80) (2017) (citations omitted).

"An attorney's decision about which defense to present is a question of trial strategy." *Hendrix v. State*, 298 Ga. 60, 62 (2) (a) (779 SE2d 322) (2015) (citation and punctuation omitted). More specifically, "[p]ursuit of an 'all or nothing' defense [generally] is a permissible trial strategy." *Smith v. State*, 301 Ga. 348, 353 (III) (b) (801 SE2d 18) (2017). "[T]he decision not to request a jury charge on a lesser included offense in order to pursue an 'all-or-nothing' defense is a matter of trial strategy." *Wells v. State*, 295 Ga. 161, 166 (2) (b) (758 SE2d 598) (2014) (citation and punctuation omitted). Furthermore, although "attorneys do have an affirmative duty to consult with their clients" about what defense to present, "an attorney's failure to fulfill the duty to consult regarding trial strategy does not in and of itself constitute ineffective assistance." *Hendrix*, 298 Ga. at 63-64 (2) (a) (citations omitted). As authority for this principle, *Hendrix* cited *Van Alstine v. State*, 263 Ga. 1, 3-4 (426 SE2d 360) (1993), which relied on the portion of the commentary to ABA Standard for Criminal Justice 4-5.2 (2nd ed. 1980) that recognized the defense lawyer's duty to consult fully with the accused about submission of lesser included

10

offenses to the jury, but which rejected the same commentary's statement that the defendant rather than the lawyer should decide whether to seek such submission. Since *Van Alstine*, we are not aware of any development that would cause us to reconsider its holding. To the contrary, the commentary to the next edition of that same ABA Standard continued to recognize the duty to consult with the defendant about lesser included offenses but removed the language assigning the ultimate decision to the defendant, see ABA Standard for Criminal Justice 4-5.2 cmt. (3rd ed. 1993), and afterward "courts have uniformly decided that whether or not to ask the trial judge to instruct the jury on lesser-included offenses is a matter of strategy and tactics ceded by a defendant to his lawyer." *People v. Colville*, 979 NE2d 1125, 1130 (N.Y. 2012) (collecting cases). See also Rule 1.2 (a) of the Georgia Rules of Professional Conduct found in Bar Rule 4-102 (d) (also omitting such decision from its list of decisions reserved to criminal defendants). Accordingly, we adhere to our decision in *Van Alstine* that the failure to consult fully with the accused about whether to pursue an all-or-nothing defense or request a jury charge on a lesser included offense should be rigorously scrutinized, but that such failure does not constitute ineffective assistance of counsel in every case as a matter of law. 263 Ga. at 4. See also

11

*Roberts v. State*, 263 Ga. 807, 808-809 (2) (c) (439 SE2d 911) (1994).

At the hearing on the motion for new trial, Blackwell's trial counsel explained that he requested jury charges on justification and accident, but not voluntary manslaughter, based on his discussions with Blackwell, the evidence supporting the self-defense charge, and the lack of evidence supporting a charge on voluntary manslaughter. Counsel believed that it would have been inconsistent under the evidence to claim self-defense, but then also to ask for a charge on voluntary manslaughter. Throughout the case, including in his testimony on motion for new trial, Blackwell himself consistently maintained that he acted in self-defense. In this case, therefore, as in *Van Alstine*, the transcript of the hearing on Blackwell's motion for new trial establishes that a charge on voluntary manslaughter "was declined pursuant to an informed strategic choice by trial counsel which comported with [Blackwell]'s strong feelings about the justification defense." 263 Ga. at 4. It was not patently unreasonable for trial counsel, rather than risk losing credibility, to make the strategic decision not to seek a voluntary manslaughter charge and not "to convince [Blackwell] that it was the preferable way to proceed." *Wells*, 295 Ga. at 165 (2) (b). See also *Savior v. State*, 284 Ga. 488, 493 (4) (668 SE2d 695)

12

(2008) ("counsel is entitled to base the defense on the veracity of the client's assertions" (citation and punctuation omitted)).

Moreover, even assuming that trial counsel's performance was deficient, Blackwell has not shown resulting prejudice. "In the context of a failure-to-consult claim such as that alleged here, the defendant must establish that his counsel's failure to consult was prejudicial to his defense, i.e., that there is a reasonable probability that, but for counsel's failure to consult, the result of his trial would have been different." *Hendrix*, 298 Ga. at 64 (2) (a) (citation and punctuation omitted). Blackwell relies on his testimony that, had counsel explained the offense of voluntary manslaughter and its penalty, he would have asked trial counsel to request a charge on that offense. To demonstrate prejudice, however, Blackwell would have to establish a reasonable probability that, had counsel consulted with him, counsel would have opted to pursue a charge on the lesser included offense of voluntary manslaughter and that such a strategy would in reasonable probability have resulted in a different outcome. See id. In the first place, there is no evidence that counsel would have requested a charge on voluntary manslaughter, a decision that was his to make, even if he had properly consulted Blackwell. To the contrary, counsel's testimony shows

13

that he reasonably viewed such a charge as inappropriate and unhelpful. Second, had trial counsel consulted with Blackwell and requested a charge on voluntary manslaughter, there could be no ineffective assistance if the charge was not supported by even slight evidence that he was seriously provoked, causing him to begin shooting solely as the result of a sudden, violent, and irresistible passion. See *Jeffrey v. State*, 296 Ga. 713, 716 (2) (770 SE2d 585) (2015). There was some evidence, on which Blackwell relies, that he had been injured by numerous gunshots on two prior occasions, that he did not go back inside his apartment on this occasion, and that he may have acted in self-defense after Kelly made a verbal threat and cocked his pistol. But Blackwell did not testify at trial, and there is no evidence that he reacted passionately to Kelly's threat and pistol-wielding. See *Allen v. State*, 290 Ga. 743, 746-747 (4) (723 SE2d 684) (2012); see also *Dugger v. State*, 297 Ga. 120, 124 (7) (772 SE2d 695) (2015). Finally, even if the record could be construed to include slight evidence of voluntary manslaughter so as to warrant a charge thereon, Blackwell was not prejudiced unless there is a reasonable probability that, absent counsel's alleged error in failing to consult with Blackwell and request that charge, the jury would have reached a verdict of guilty of voluntary manslaughter. See

14

*Hendrix*, 298 Ga. at 64 (2) (a); *Jeffrey*, 296 Ga. at 716 (2); *Hung v. State*, 284 Ga. 796, 796-797 (1) (671 SE2d 811) (2009). Any such slight evidence of voluntary manslaughter was insufficient, especially in light of the strong evidence of Blackwell's guilt of malice murder, to establish a reasonable probability that the jury would have returned a guilty verdict on voluntary manslaughter rather than murder. See *Darville v. State*, 289 Ga. 698, 701-702 (4) (a) (715 SE2d 110) (2011).

### *Case No. S17A1929*

4. Before trial, the State filed notice of its intention to introduce evidence of Blackwell's prior conviction for the felony of entering an automobile, see OCGA § 16-8-18, and to seek punishment of Blackwell as a repeat offender pursuant to OCGA § 17-10-7 (a). A certified copy of the prior conviction was admitted for sentencing purposes, and the State argued that a sentence of life imprisonment without the possibility of parole was therefore mandatory for murder under OCGA § 17-10-7 (a). In relevant part, subsection (a) of OCGA § 17-10-7 provides that, after having been convicted of a felony, a person who commits another felony "shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she

15

stands convicted." The State argued that "the longest period of time prescribed for the punishment" of Blackwell's "subsequent offense" of murder was life without parole under OCGA § 16-5-1 (e) (1) ("A person convicted of the offense of murder shall be punished by death, by imprisonment for life without parole, or by imprisonment for life."). The trial court disagreed, sentenced Blackwell to life in prison for murder, and entered an order denying the State's subsequent motion to vacate that sentence as void and enter a sentence of life in prison without the possibility of parole. It is from that order that the State appeals.[3] See OCGA § 5-7-1 (a) (6); *State v. Barrow*, 332 Ga. App. 353, n. 2 (772 SE2d 802) (2015); *State v. Jones*, 265 Ga. App. 493, 493-494 (1) (594 SE2d 706) (2004).

In construing OCGA § 17-10-7 (a), "we must presume that the General Assembly meant what it said and said what it meant and so we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. The common and customary usages of the words

---

[3] In another recent appeal by a criminal defendant, the same issue was presented but did not have to be resolved. See *Hampton v. State*, 302 Ga. 166, 172 (5) (805 SE2d 902) (2017) (holding that if the trial court erred in saying that life without parole was statutorily mandated, the error was harmless because of the court's further statement that, in any event, it would have exercised its discretion to impose that sentence).

16

are important, but so is their context." *State v. Riggs*, 301 Ga. 63, 64 (1) (799 SE2d 770) (2017) (citation omitted).  And in this case, we begin our analysis by considering the context of OCGA § 17-10-7 (a).  "For context we look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." *Riggs*, 301 Ga. at 68 (2) (a) (citation and punctuation omitted).

We first summarize general principles of law that relate to the determination of sentencing, particularly as they pertain to murder and habitual offenders.  "In a case in which a jury finds a defendant guilty of murder, except where the prosecutor seeks the death penalty, sentencing is determined by the judge.  See OCGA § 17-9-2." *Lewis v. State*, 301 Ga. 759, 765 (4) (804 SE2d 82) (2017).  "Although the legislature defines crimes and sets the ranges of sentences . . . , trial courts generally have the discretion to fashion sentences that fit the crimes for which the defendant is convicted, so long as the sentences fall within the statutory ranges." *Riggs*, 301 Ga. at 68 (2) (a).  It is, however, "within the power of the legislature to direct the punishment to be prescribed for second offenders and to leave no discretion to the trial judge." *Knight v. State*,

17

243 Ga. 770, 771 (1) (257 SE2d 182) (1979). See also *Isom v. State*, 261 Ga. 596, 597 (1) (408 SE2d 701) (1991) ("a legislature may constitutionally limit judicial discretion in sentencing").

In OCGA § 17-10-7,[4] the General Assembly has limited the discretion of

---

[4] OCGA § 17-10-7 provides:

(a) Except as otherwise provided in subsection (b) or (b.1) of this Code section, any person who, after having been convicted of a felony offense in this state or having been convicted under the laws of any other state or of the United States of a crime which if committed within this state would be a felony and sentenced to confinement in a penal institution, commits a felony punishable by confinement in a penal institution shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.

(b)(1) As used in this subsection, the term "serious violent felony" means a serious violent felony as defined in subsection (a) of Code Section 17-10-6.1.

(2) Except as provided in subsection (e) of Code Section 17-10-6.1, any person who has been convicted of a serious violent felony in this state or who has been convicted under the laws of any other state or of the United States of a crime which if committed in this state would be a serious violent felony and who after such first conviction subsequently commits and is convicted of a serious violent felony for which such person is not sentenced to death shall be sentenced to imprisonment for life without parole. Any such sentence of life without parole shall not be suspended, stayed, probated, deferred, or withheld, and any such person sentenced pursuant to this paragraph shall not be eligible for any form of pardon, parole, or early release administered by the State Board of Pardons and Paroles or for any earned time, early release, work release, leave, or any other sentence-reducing measures under programs administered by the Department of Corrections, the effect of which would be to reduce the sentence of life imprisonment without possibility of parole, except as may be authorized by any existing or future provisions of the Constitution.

(b.1) Subsections (a) and (c) of this Code section shall not apply to a second

18

trial judges in sentencing habitual offenders. The language at issue in subsection (a) has been part of Georgia law for well over 150 years, long before parole was initially used in this state or any other. See Laws 1833, Cobb's 1851 Digest, § 339, p. 840 (requiring that the second offender "be sentenced to undergo and suffer the longest period of time and labor prescribed for the punishment of such [second] offense"); Penal Code of 1910, § 1222 et seq. (codifying Ga. L. 1908, p. 264, which created a system of parole); Neil P. Cohen, The Law of Probation and Parole § 1:12 (June 2017 Update) ("Parole's initial use [in the United States] came in 1876. . . . By 1898, half the states had adopted a parole system."). Subsection (c) of OCGA § 17-10-7 further limits

---

or any subsequent conviction for any violation of subsection (a), paragraph (1) of subsection (i), or subsection (j) of Code Section 16-13-30.

(c) Except as otherwise provided in subsection (b) or (b.1) of this Code section and subsection (b) of Code Section 42-9-45, any person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

(d) For the purpose of this Code section, conviction of two or more crimes charged on separate counts of one indictment or accusation, or in two or more indictments or accusations consolidated for trial, shall be deemed to be only one conviction.

(e) This Code section is supplemental to other provisions relating to recidivous offenders.

19

judicial sentencing discretion by providing that a person convicted of three felonies shall, upon subsequent conviction for a fourth felony, "serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served." The General Assembly added this provision in 1953 in the same paragraph as the provision currently codified as subsection (a). Ga. L. 1953, Nov.-Dec. Sess., p. 289; *Knight*, 243 Ga. at 774 (2), n. 1; *State v. Carter*, 175 Ga. App. 38, 39 (332 SE2d 349) (1985). The Sentence Reform Act of 1994 added the provision currently codified as subsection (b), which mandates a sentence of life imprisonment without parole for a person who is convicted of a "serious violent felony" after having previously been convicted of a "serious violent felony." Ga. L. 1994, p. 1959, § 12. All of these subsections of OCGA § 17-10-7 must be read together. See *Barney v. State*, 333 Ga. App. 807, 814 (4) (777 SE2d 490) (2015); *State v. Jones*, 253 Ga. App. 630, 632 (560 SE2d 112) (2002). See also *Knight*, 243 Ga. at 773 (2).

When the provisions now included in subsections (b) and (c) were added to OCGA § 17-10-7, they expressly proscribed parole eligibility for those recidivists convicted of a fourth felony or a second "serious violent felony," as

20

there is no such proscription in the language of subsection (a).[5] The enactment

of subsections (b) and (c) expanded the reach of Georgia's habitual offender

statute to specify when parole would be unavailable, but the converse is not true.

Subsection (a) has never been understood to expand the instances of parole

ineligibility set forth in subsections (b) and (c).[6] To the contrary, subsection (a)

has always been understood not to affect parole. See *Coleman v. State*, 337 Ga.

App. 732, 736 (2) (788 SE2d 826) (2016) (OCGA § 17-10-7 (a) "does not

prevent the Board of Pardons and Paroles from granting [the defendant] parole

at some point during his sentence"); *Moore v. State*, 263 Ga. App. 548, 551-552

(4) (588 SE2d 327) (2003); Jack Goger, Daniel's Georgia Criminal Trial

---

[5] We note that, unlike its effect on parole eligibility, the language of OCGA § 17-10-7 (c) generally leaves in place the trial court's discretion to probate or suspend sentences that is explicitly recognized in subsection (a). See *Page v. State*, 287 Ga. App. 182, 184 (3) (651 SE2d 131) (2007); *Carter*, 175 Ga. App. at 38-41. But trial courts have no such discretion where the sentence is for life imprisonment. See *Singleton v. State*, 293 Ga. App. 755, 757 (2) (667 SE2d 711) (2008) (by acknowledging the trial court's discretion to probate or suspend sentences "unless otherwise provided by law," OCGA § 17-10-7 (a) recognizes the express abrogation in OCGA § 17-10-1 of the trial court's discretionary power to grant probation or suspension in cases in which life imprisonment is imposed).

[6] One consequence of construing OCGA § 17-10-7 (a) to mandate ineligibility for parole in this case and other murder cases would be to make subsections (b) and (c) meaningless in such cases, as a repeat offender would be sentenced to life without parole for his subsequent murder conviction regardless of whether his prior conviction was a "serious violent felony" and regardless of whether he had three prior felony convictions. Regarding the current applicability of subsections (b) and (c) to murder cases, see generally *Kimbrough v. State*, 300 Ga. 516, 517-518 (2) (796 SE2d 694) (2017).

21

Practice Appendix B (December 2017 Update) ("Any sentence under [OCGA § 17-10-7] (a) is parole eligible.").  While subsection (c) requires the recidivist to "serve the maximum time provided in the sentence of the judge" and not be eligible for parole, this is quite different from saying in subsection (a) that the recidivist shall be sentenced to "the longest period of time prescribed for the punishment of the subsequent offense."  See *Carter*, 175 Ga. App. at 40 (contrasting the wording of these two subsections).

In context, this language of OCGA § 17-10-7 (a), dating back to 1833 and repeatedly reenacted in recent times, is most naturally and reasonably understood to mean the greatest measure of duration authoritatively expressed for punishment.  See Noah Webster, American Dictionary of the English Language (1828) (defining "long" as "[e]xtended to any certain measure expressed"; defining "period" to include "[l]ength or usual length of duration"; defining "time" to include "[a] space or measured portion of duration"; and defining "prescribe" as "[t]o set or lay down authoritatively for direction"); New Shorter Oxford English Dictionary (1993 ed.) (defining "long" as "having a great extent in duration"; defining "period" to include "time of duration"; defining "time" to include "[a] finite extent of continued existence; e.g. the

22

interval between two events"; and defining "prescribe" as "[w]rite or lay down as a rule or direction; impose authoritatively"). Neither that language nor the context of OCGA § 17-10-7 (a) gives any indication that it encompasses parole ineligibility or mandates the use of any available sentencing option that prohibits parole.

The State argues that subsection (a) requires the most severe sentence prescribed for punishment of the subsequent offense, i.e., life without parole in the case of murder for which the death penalty is not sought. But subsection (a) does not refer to the "maximum" sentence prescribed or to any synonym such as "harshest" or "most severe." Nor does subsection (a) focus on the period of time that the defendant will "serve" or be "eligible" to serve. Instead, the sentence required by subsection (a) is the *longest* period of time *prescribed* for the subsequent offense. Such language does not encompass parole ineligibility because, although it is a drastic penalty about which a criminal defendant should be informed by his counsel prior to entering a guilty plea, see *Alexander v. State*, 297 Ga. 59, 65 (772 SE2d 655) (2015), parole ineligibility "in no way *lengthens* the sentence itself." *Smith v. State*, 287 Ga. 391, 394 (2) (a) (697 SE2d 177) (2010) (citation and punctuation omitted; emphasis supplied). Accordingly, we

conclude that the trial court properly exercised its discretion to sentence Blackwell for murder to life in prison with the possibility of parole and that it correctly denied the State's subsequent motion to vacate that sentence as void.

Judgments affirmed. All the Justices concur.

Decided January 29, 2018.

Murder. Cobb Superior Court. Before Judge Schuster.

Gary W. Jones, for appellant.

D. Victor Reynolds, District Attorney, Michael S. Carlson, John R. Edwards, Theresa M. Schiefer, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.