304 Ga. 369
FINAL COPY

S18A1277.  JOHNSON v. THE STATE.

HINES, Chief Justice.

John Johnson was convicted of murder but was granted a new trial.  The State appealed, and the trial court entered an order denying Johnson's motion for appeal bond.  Johnson now appeals from that order, contending that it is directly appealable pursuant to OCGA § 5-7-5[1] and that the denial of bond violates the same statute.  For the reasons that follow, which differ from those given by the trial court, we affirm.

Johnson was charged with murder and related crimes in 2006, was granted pretrial bond, was tried before a jury in 2014, was convicted of felony murder and possession of a firearm during the commission of a felony, and was sentenced to life imprisonment for the murder and a consecutive five-year term

---

[1] OCGA § 5-7-5 provides: "In the event the state files an appeal as authorized in this chapter, the accused shall be entitled to be released on reasonable bail pending the disposition of the appeal, except in those cases punishable by death.  The amount of the bail, to be set by the court, shall be reviewable on direct application by the court to which the appeal is taken."

for the firearms charge. The trial court, however, granted his motion for new trial and vacated the previously imposed sentences, and the State filed a notice of appeal.[2] Johnson subsequently filed a motion for appeal bond in the trial court under OCGA § 5-7-5. After a hearing, the trial court denied that motion, deciding that "the bond [Johnson] seeks is not, in fact, a supersedeas or appeal bond to which OCGA § 5-7-5 applies, but is rather a pretrial bond, which would put [him] back in his previous posture before trial in 2014," and that the pertinent question "is not whether [Johnson] should [be] granted bond pending the outcome of the State's appeal, but whether [he] should be released on bond while he is awaiting a new trial on the charges against him." The trial court examined the circumstances and concluded that Johnson "should not be released on bond prior to his new trial." Although Johnson did not obtain a certificate of immediate review from the trial court, he filed an application for discretionary review, which we granted to consider both the appealability and the merits of the order denying bond.[3]

---

[2] The State's appeal was docketed in this Court as Case No. S18A1275, which is currently scheduled for oral argument in October 2018.

[3] After the appeal was docketed, Johnson filed his brief, and he subsequently moved this Court for an expedited ruling and withdrew his prior request for oral argument. We granted Johnson's motion to expedite. See *Ingle v. State*, 216 Ga. App. 836, 837 (456 SE2d

1. We first consider whether the denial of Johnson's appeal bond is directly appealable. Johnson relies on the second sentence of OCGA § 5-7-5, which provides that "[t]he amount of the bail, to be set by the court, shall be reviewable on direct application by the court to which the appeal is taken." This sentence must be read, Johnson argues, to include review of a *denial* of bail pending an appeal by the State. For purposes of this appeal only, we assume that this provision of OCGA § 5-7-5 does not provide for direct review of the denial of bail. The Appellate Practice Act (APA), OCGA §§ 5-6-30 through 5-6-51, allows appeals by defendants to be taken from "[a]ll final judgments, that is to say, where the case is no longer pending in the court below . . . ." OCGA § 5-6-34 (a) (1). In *Humphrey v. Wilson*, 282 Ga. 520, 524 (1) (652 SE2d 501) (2007), we overruled our previous precedent requiring compliance with the interlocutory appeal provisions of OCGA § 5-6-34 (b) and held that the denial of the request for bail pending a warden's appeal in a habeas case was a final judgment. 282 Ga. at 523-524 (1). Likewise, we view the denial of Johnson's motion for appeal bond as a final judgment.

281) (1995). Cf. *Foster v. State*, 231 Ga. 372 (202 SE2d 52) (1973).

3

The trial court erred in characterizing that motion as one for pretrial bond. "The interlocutory appeal procedures set forth in OCGA § 5-6-34 (b) are required to obtain review of an order denying or setting pre-trial bond." *Mullinax v. State*, 271 Ga. 112, 112 (1) (515 SE2d 839) (1999). Johnson's case, however, is currently at an appellate stage and will not return to a pretrial stage unless and until we affirm the grant of a new trial when we consider the State's appeal. Moreover, during the State's appeal, Johnson's case cannot be considered to be "pending in the court below," OCGA § 5-6-34 (a) (1), because the grant of a motion for new trial "shall be considered a final order" for purposes of any ensuing appeal by the State. OCGA § 5-7-2 (c). Accordingly, we conclude that *Mullinax* is inapplicable, that the denial of Johnson's motion for appeal bond is directly appealable by Johnson, and, therefore, this appeal is not subject to dismissal for failure to obtain a certificate of immediate review as required by OCGA § 5-6-34 (b).

2. Turning to the merits, Johnson relies on the first sentence of OCGA § 5-7-5, which provides that, "[i]n the event the state files an appeal as authorized in this chapter, the accused shall be entitled to be released on reasonable bail pending the disposition of the appeal, except in those cases punishable by

death." The initial condition of the statute is met, as the State did file its appeal as authorized in Chapter 7 of Title 5 of the Georgia Code, the same chapter that includes this bail provision. See OCGA §§ 5-7-1 (a) (8), 5-7-2 (c). Johnson insists that he is therefore "entitled to be released" under OCGA § 5-7-5 because the State has not in any manner sought the death penalty in his case, and that, as a result, the case does not come within the exception for "those cases punishable by death." The State, however, argues that Johnson's case is "punishable by death" because he was charged with murder and the death penalty is one of the sentencing options provided for that crime. See OCGA §§ 16-5-1 (e) (1) ("A person convicted of the offense of murder shall be punished by death, by imprisonment for life without parole, or by imprisonment for life."); 17-10-30 (b) (requiring consideration of mitigating and aggravating circumstances in cases of offenses, other than aircraft hijacking and treason, "for which the death penalty may be authorized").

In construing OCGA § 5-7-5, we "presume that the General Assembly meant what it said and said what it meant and so we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. The common and customary usages of the words are important,

5

but so is their context," which includes not only the statute's other provisions and its structure and history, but also the constitutional, statutory, and common law "that forms the legal background of the statutory provision in question." *Blackwell v. State*, 302 Ga. 820, 828 (4) (809 SE2d 727) (2018) (citation and punctuation omitted). The word "'punishable' is not a term of art and has an ordinary meaning." *United States v. Mangahas*, 77 M.J. 220, 224 (C.A.A.F. 2018). And the phrase "punishable by death" has long been used to define the term "capital" felony or offense. *State v. Ameer*, No. S-1-SC-36395, 2018 WL 1904680, at *2 (N.M. April 23, 2018); *Mills v. Moore*, 786 S2d 532, 538 (Fla. 2001).

Consistent with the ordinary use of this terminology, this Court has held that, although certain offenses like armed robbery can no longer be considered capital felonies, murder is "punishable by death" and remains a "capital felony," as those two phrases are used in OCGA § 17-7-70. *Weatherbed v. State*, 271 Ga. 736, 737-738 (524 SE2d 452) (1999). Cf. *Orr v. State*, 276 Ga. 91, 92 (1) (575 SE2d 444) (2003). The reason is that murder "belongs to a class of case in which the death penalty can, under certain circumstances, be imposed," as distinguished "from that class in which under no circumstances would death

6

ever be inflicted as a penalty for the violation of the same." *Weatherbed*, 271 Ga. at 738 (citation, punctuation and emphasis omitted). And "[t]he fact that the State has chosen not to pursue the death penalty does not change the *class* of case to which it belongs." Id. at 738-739 (emphasis in original). Moreover, federal circuits interpreting the phrase "punishable by death" in a statute of limitation agree that this language, as with similar language in other statutes, reflects the serious nature of the offense, and that whether an offense is "punishable by death" depends on whether the statute dealing with that offense authorizes death as a punishment, rather than whether the prosecution seeks the death penalty or whether the death penalty is available in the circumstances of a particular case. *United States v. Payne*, 591 F3d 46, 57-59 (2d Cir. 2010). See also *United States v. Ealy*, 363 F3d 292, 296-297 (4th Cir. 2004) (certain federal statutory murder offenses were "punishable by death" even if the death penalty could not constitutionally be imposed because the prosecution did not allege any of the statutory aggravating factors in the indictment); OCGA § 17-10-31 (a) (recognizing that an offense may be "punishable by death" and yet a sentence of death be prohibited in the absence of a finding of at least one statutory aggravating circumstance). Johnson argues in his appellate reply brief that

OCGA § 5-7-5 excepts only *cases* punishable by death, but *Weatherbed* was dealing with a statute, OCGA § 17-7-70 (b), that likewise excepted from its application "cases" that were "punishable by death." See also *Neal v. State*, 290 Ga. 563, 567-572 (722 SE2d 765) (2012) (Hunstein, C. J., concurring, joined by all Justices, similarly holding that our appellate jurisdiction over "cases" in which a sentence of death "could be imposed" includes all murder cases).

We can discern no reason from the immediate context of OCGA § 5-7-5 or from its legal background to interpret the phrase "cases punishable by death" in that statute in any manner different from our interpretation of OCGA § 17-7-70 (b) in *Weatherbed*. It follows that Johnson's murder case comes within the exception clause of OCGA § 5-7-5. The question then becomes what effect that statute has on a case that comes within its exception clause. The primary clause of OCGA § 5-7-5 providing that "the accused shall be entitled to be released" does not govern Johnson's case. But does this mean that the statute has the effect of absolutely prohibiting bail in all murder cases where an appeal by the State is pending? Or is the decision regarding bail on appeal left in some measure to the trial court's discretion?

8

Legislative exceptions in statutes should be interpreted according to the rules of construction set out above, see *Blackwell*, 302 Ga. at 828 (4), and "applied only so far as their language fairly warrants." *Sawnee Elec. Membership Corp. v. Ga. Pub. Svc. Comm.*, 273 Ga. 702, 704 (544 SE2d 158) (2001) (citation and punctuation omitted). The general rule of OCGA § 5-7-5 is that an accused is *automatically entitled* to reasonable bail pending an appeal by the State. The exception removes cases punishable by death from that general rule. Accordingly, an accused in such a case is clearly not *automatically entitled* to bail pending the State's appeal. But OCGA § 5-7-5 does not purport to make any special provision for such cases. It does not say, for instance, that an accused has the right to have a trial court exercise its discretion to decide whether bail is appropriate in his case. And it does not say that bail is never allowed in such cases. Moreover, viewing the exception clause of OCGA § 5-7-5 in context with the second sentence of the statute highlights the absence of any special provision for the denial of bail, as that second sentence expressly mentions only review of the amount of bail, not review of a denial of bail. In cases such as this one where the offense occurred before July 1, 2013, "OCGA § 5-7-1 et seq. must be construed strictly against the State and liberally in favor

9

of the interests of defendants." *State v. Outen*, 289 Ga. 579, 581 (714 SE2d 581) (2011) (citation and punctuation omitted). Cf. OCGA § 5-7-6 ("This chapter shall be liberally construed to effectuate the purposes stated in this chapter."); Ga. L. 2013, p. 222, §§ 3, 21 (enacting OCGA § 5-7-6 and applying it only to offenses which occur on or after July 1, 2013). And interpreting OCGA § 5-7-5 as leaving the grant or denial of bail in the trial court's discretion would have the advantage of limiting the reach of the exception clause to a less drastic departure from the general statutory rule. Nevertheless, because the exception clause has no language that could be construed as a provision for bail in cases punishable by death, we cannot say that it is possible to determine from OCGA § 5-7-5 alone whether bail pending appeal by the State can be granted within the trial court's discretion and what is the extent of any such discretion.

The APA has no general appellate provisions for appeal bonds that apply to appeals by criminal defendants, but there is such a provision in OCGA § 17-6-1 (g).[4] Under that statute, "[n]o appeal bond shall be granted to any person

---

[4] In its entirety, OCGA § 17-6-1 (g) reads:

No appeal bond shall be granted to any person who has been convicted of murder, rape, aggravated sodomy, armed robbery, home invasion in any degree, aggravated child molestation, child molestation, kidnapping, trafficking in cocaine or marijuana, aggravated stalking, or aircraft hijacking and who has been sentenced to serve a period of incarceration of five years or more. The granting of an appeal bond

10

who has been convicted of murder [or certain other enumerated felonies] and who has been sentenced to serve a period of incarceration of five years or more." No offense enumerated in that statute other than murder is punishable by death, with the possible exception of the rare case of aircraft hijacking. See OCGA §§ 16-5-44 (c), 17-10-30 (a); *Blackwell v. State*, 299 Ga. 122, 122, n. 1 (786 SE2d 669) (2016). OCGA § 17-6-1 (g) also provides that "[t]he granting of an appeal bond to a person who has been convicted of any other felony offense or of [certain misdemeanor offenses] shall be in the discretion of the convicting court." As a result, if OCGA § 17-6-1 (g) was read as extending to the context of appeal bonds in appeals by the State, it would conflict with the general rule of automatic entitlement to bail in OCGA § 5-7-5 with respect to almost every offense it covers, including virtually every type of felony other than murder. In short, we fail to see how OCGA § 17-6-1 (g) includes appeal bonds in State appeals that involve murder when it conflicts with another appeal bond statute

---

to a person who has been convicted of any other felony offense or of any misdemeanor offense involving an act of family violence as defined in Code Section 19-13-1, or of any offense delineated as a high and aggravated misdemeanor or of any offense set forth in Code Section 40-6-391, shall be in the discretion of the convicting court. Appeal bonds shall terminate when the right of appeal terminates, and such bonds shall not be effective as to any petition or application for writ of certiorari unless the court in which the petition or application is filed so specifies.

11

in every other type of case, when it mentions nothing about any State appeals, and when the conflicting statute expressly governs bail pending an appeal by the State.

Although OCGA § 17-6-1 (g) cannot be applied to Johnson's murder case and there is no other appeal bond statute in felony cases[5] besides OCGA § 5-7-5, we still must answer the questions of whether bail pending appeal can be granted to Johnson in the trial court's discretion and, if so, what is the extent of that discretion. In the absence of clear statutory direction, we look to the relevant principles under our case law. Under our precedents, there is no constitutional right to bond pending appeal, and whether to grant or deny such bail rests in the sound discretion of the trial court. See *Getkate v. State*, 278 Ga. 585, 586 (604 SE2d 838) (2004); *Vanderford v. Brand*, 126 Ga. 67, 70-72 (2) (54 SE 822) (1906). In 1976, prior to the enactment of OCGA § 17-6-1 (g), this Court recognized Georgia's lack of "standards by which to determine whether bail pending appeal [by a defendant] should be granted or denied," and so looked to both federal statutory law and to the ABA Standards for Criminal

---

[5] We note that OCGA § 17-6-1 (b) (1) mandates appeal bonds for persons charged with a misdemeanor.

12

Justice 21-2.5 (1974). *Birge v. State*, 238 Ga. 88, 89-90 (230 SE2d 895) (1976). The ABA Standards are more demanding than those set forth for pretrial bail in OCGA § 17-6-1 (e), as they mandate certain findings in addition to consideration of the factors relevant to pretrial release, as well as the nature of the crime and length of sentence imposed. This Court adopted these standards and added one requirement found only in the federal statute, that the appeal is not frivolous or taken for delay. *Birge*, 238 Ga. at 89-90. The federal statute cited in *Birge* was repealed in 1984 by an act that made it more difficult for defendants to obtain bail pending appeal. See 18 USC § 3143 (b); *United States v. McCahill*, 765 F2d 849, 850 (9th Cir. 1985). In 1983, still before OCGA § 17-6-1 (g) was enacted, this Court declined to apply the *Birge* standards to a defendant convicted of the capital crime of murder or even to adopt any other standards, because such defendants should be treated differently due to the more heinous nature of the crime. *Hardin v. State*, 251 Ga. 533, 534 (307 SE2d 669) (1983). *Hardin* made it clear that "whether to grant a defendant bond on [his] appeal following conviction for murder is a matter committed entirely to the discretion of the trial court" and that "the mere fact that the defendant stands

13

convicted of murder is sufficient in and of itself to explain why an appeal bond is denied." Id.

The same sources considered by *Birge* for guidance in granting or denying a criminal defendant bond during his appeal have also addressed the issue of bond pending appeals by the prosecution. The ABA Standards generally provide rather lenient rules in this regard, but they do not address the issue in the context of prosecution appeals from post-verdict decisions such as the grant of a new trial, because it is a premise of the standards that "such rulings should not give rise to prosecution appeals." ABA Standards for Criminal Justice 21-1.4 (c) & Commentary (2nd ed. 1980) (unchanged in relevant part from the 1974 edition). The United States Code, on the other hand, does provide for an appeal by the prosecution from an order "granting a new trial after verdict or judgment . . . ." 18 USC § 3731. And the decision regarding the defendant's release or detention pending the appeal is governed by 18 USC § 3142, the same federal statute that governs pretrial release. 18 USC § 3143 (c). See also 8 CJS Bail § 65 ("Bail pending a state's appeal is generally subject to the requirements for pretrial bail, unless the state appeals from the dismissal of the charges.").

We have found no authority that, in the absence of a statutory provision, bail pending appeal should be absolutely prohibited in any case. To the contrary, our precedent requires that, if there is no statutory direction, whether to grant bail pending appeal must be left in the sound discretion of the trial court. See *Hardin*, 251 Ga. at 534; *Birge*, 238 Ga. at 89-90; *Vanderford*, 126 Ga. at 70-72 (2). Cf. OCGA § 17-6-1 (g) (prohibiting bail pending an appeal by the defendant in certain cases). Although OCGA § 5-7-5 grants most criminal defendants automatic entitlement to bail pending an appeal by the State, there is no statutory provision for such bail pending the State's appeal in the capital case of murder. Consequently, whether to grant bail pending an appeal by the State in murder cases comes within the sound discretion of the trial court. This does not mean, however, that the rule of *Hardin* applies so as to allow the trial court absolute discretion to deny bail pending appeal in a murder case solely because the defendant stands convicted of murder. Johnson does not stand before us as a convicted defendant who is appealing his murder conviction. Because the trial court's discretion is not absolute in this case, we will identify the standards that govern its exercise of discretion and inform our review.

15

As in *Birge*, we can look for guidance from outside sources, but we should also seek to be consistent with the related Georgia statutory scheme even though the General Assembly has not yet made it so comprehensive as to set forth a provision specifically governing bail in murder cases involving an appeal by the State. See *Snapper Power Equip. Co. v. Crook*, 206 Ga. App. 373, 375 (1) (425 SE2d 393) (1992) (courts may fill in legislative gaps by looking to, inter alia, other relevant statutes as this Court has done). After *Birge* and *Hardin*, the General Assembly took an even more strict approach to criminal appeal bonds in appeals by the defendant when it prohibited them for murder and certain other felonies by its enactment of OCGA § 17-6-1 (g). But the General Assembly never changed its pre-existing approach in OCGA § 5-7-5 for bail pending appeal by the State. Because it provides for automatic entitlement to bail for virtually every felony except murder, that approach is far less strict, to say the least, than are the approaches for bail pending appeals by criminal defendants in OCGA § 17-6-1 (g), *Birge*, and *Hardin*. It would therefore make little sense to apply the full weight of any of those much stricter rules to bail pending the State's appeal in a murder case, where the trial court has determined that the defendant's conviction was improperly obtained. Nevertheless, we recognize

16

that the General Assembly has chosen to treat murder cases differently in OCGA § 5-7-5, and trial courts must be allowed some level of discretion to deny requests for bail pending appeals by the State in such cases. We conclude that the discretion of trial courts in these cases should be governed by the standards for deciding whether to grant pretrial bail, which are the standards ordinarily used in other jurisdictions for appeals by the State if the prosecution is not terminated by dismissal, including appeals in federal courts from the grant of a new trial. By this holding, we do not mean that the trial court was correct that Johnson is seeking a pretrial bond rather than an appeal bond. Again, his case is currently at an appellate stage until we consider the State's appeal. In the meantime, however, it is appropriate to evaluate Johnson's request for an appeal bond by the standards for pretrial bail in OCGA § 17-6-1 (e). Because the trial court undertook such an evaluation and explained its reasons, and nothing in its order or in the record shows that it manifestly or flagrantly abused its discretion, the denial of Johnson's motion for appeal bond is affirmed. See *Constantino v. Warren*, 285 Ga. 851, 854 (2) (684 SE2d 601) (2009); *Henry v. James*, 264 Ga. 527, 533 (5) (449 SE2d 79) (1994).

Judgment affirmed. Melton, P. J., Benham, Hunstein, Nahmias, Blackwell, Boggs, and Peterson, JJ., concur.

17

Decided August 27, 2018.

Murder. Fulton Superior Court. Before Judge LaGrua.

Brian C. Tevis, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Marc A. Mallon, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.